452 So.2d 1214 (1984)
STATE of Louisiana, Appellee,
v.
James Lee COLVIN, Appellant.
No. 15966-KA.
Court of Appeal of Louisiana, Second Circuit.
June 6, 1984.
Rehearing Denied July 6, 1984.
Writ Denied October 5, 1984.
*1217 Hargrove, Guyton, Ramey & Barlow by Paul A. Strickland, Shreveport, for appellant.
William J. Guste, Jr., Atty. Gen., Barbara B. Rutledge, Asst. Atty. Gen., Baton Rouge, Paul J. Carmouche, Dist. Atty., Carey T. Schimpf, Tommy J. Johnson, Asst. Dist. Attys., Shreveport, for appellee.
Before HALL, JASPER E. JONES and SEXTON, JJ.
HALL, Judge.
James Lee Colvin was charged with Armed Robbery in violation of LSA-R.S. 14:64 by bill of information filed August 27, 1982. After trial by jury, defendant was found guilty as charged and was sentenced to serve 80 years at hard labor without benefit of parole, probation, or suspension of sentence. He appealed, urging reversal of his conviction and sentence on the basis of 12 assigned errors.
On July 12, 1982, a man entered the Sausage & Cheese Store on Line Avenue in Shreveport. The man, who was armed with a gun, approached the cashier and asked her what time it was. While holding the gun on her he told her it was time to "hit the register" and demanded that she open the cash drawer and give him the money. A male employee handed over the money from the cash drawer. The armed man remained in the store approximately ten minutes threatening the four employees with the gun and forcing them to lie on the floor. At one point during the robbery, he pressed the gun firmly to the forehead of a female employee. Another woman employee was grabbed by the man and thrown to the ground.
On July 26, 1982, defendant was arrested by the Shreveport Police Department on an unrelated charge. Subsequently, a lineup was conducted and each of the four employees of the Sausage & Cheese Store identified defendant as the armed robber.
Defendant initially pled not guilty but later changed his plea to not guilty and not guilty by reason of insanity. A motion for *1218 a sanity hearing was filed on October 6, 1982. The Sanity Commission returned their reports and the district judge determined after a hearing that the defendant was competent to stand trial.
ASSIGNMENTS OF ERROR NO. 3, 8, and 9:
Since these assignments of error were not briefed nor argued, they are considered abandoned. State v. Wright, 445 So.2d 1198 (La.1984).
ASSIGNMENT OF ERROR NO. 1:
Defendant asserts as error the trial court's denial of his motion for further testing after a court-appointed Sanity Commission found him competent to stand trial. He sought to determine by further tests whether he suffered from temporal lobe epilepsy. As asserted after trial, defendant's contention relates both to his defense of insanity at the time of the offense and to his capacity to understand the nature of the proceedings against him and to assist in his own defense.
Four doctors were appointed by the court to examine defendant. However, only three reported as defendant refused to be examined by one of the doctors. One doctor stated in his report that although the defendant manifested abnormal or unusual behavior, he could not definitely state that defendant had a mental disorder or deficiency which would render him incapable of cooperating with his attorney or that he had any mental disorder at the time of the commission of the offense with which he was charged. Another doctor included the details of his interview with Colvin in his report, recounting Colvin's auditory hallucinations and delusions and concluded that Colvin was incompetent to stand trial.
The third doctor conducted the most extensive investigation of Colvin's prior medical history. After his initial interview with defendant, the doctor concluded that although Colvin exhibited noticeably bizarre behavior, he appeared to be faking or malingering, warranting further study before diagnosis or recommendation as to his capacity to proceed to trial. After further review of Colvin's records, the doctor found that psychological testing demonstrated evidence of faking or malingering and noted that the results of an electroencephalogram and brain scan were normal. He then concluded that defendant was mentally competent to stand trial and further concluded that he was able to distinguish right from wrong at the time of the offense.
After the motion for further testing was made, the trial court determined that further testing was unnecessary and found the defendant capable of standing trial. Defendant made an application for writs to this court, which was denied. This court held that the record showed that a full and complete sanity hearing was held and the evidence therein supported the finding of the trial court of defendant's capacity to proceed. We adhere to the original ruling of this court that the findings of the sanity commission were complete.
Mental incapacity to proceed must be shown by the defendant by a clear preponderance of the evidence. The trial judge's determination of capacity to stand trial is entitled to great weight. State v. Machon, 410 So.2d 1065 (La.1982). Due process and statutory law require that the issue of defendant's mental capacity to proceed shall be determined by the court. This cardinal principle permits the court to receive the aid of expert medical testimony but prohibits it from committing the ultimate decision of competency to a physician or anyone else. The court also may not base its decision solely upon an expert's conclusion which has no rational basis in the facts contained in the record of the contradictory hearing. State v. Rogers, 419 So.2d 840 (La.1982).
If defendant is indigent and forced to rely exclusively upon the findings of the court-appointed sanity commission rather than a private physician of his own choice, he is entitled to a thorough examination, and ought not be responsible for any lack of diligence by the commission appointed to examine him. State v. Coco, 371 So.2d 803 *1219 (La.1979). A defendant must, however, present evidence to support his contention that physical tests are indispensable. State v. Bastida, 310 So.2d 629 (La.1975).
For purposes of the insanity defense, the burden is on the defendant to prove by a preponderance of the evidence that he was insane at the time of the offense. The defendant must show that he suffered from a mental disease or defect which rendered him incapable of distinguishing right from wrong with reference to the conduct in question. LSA-R.S. 14:14; State v. Hamilton, 441 So.2d 1192 (La.1983).
Although defendant had the burden of establishing his incapacity to proceed and his insanity at the time of the offense, defendant has not shown that further testing would have resulted in evidence of either insanity at the time of the offense or incapacity to assist in his own defense. Although there was an indication of possible temporal lobe epilepsy in defendant's medical history, Dr. E.H. Leatherman, one expert who was called on the defendant's behalf, testified that a person suffering from a temporal lobe epileptic seizure would not have sufficient motor coordination to drive to a store with a gun, and threaten and rob its occupants. Further, defendant makes no claim that he was unable to understand the nature of the proceedings against him or assist in his defense because of this condition.
Since the testing done by the Sanity Commission was thorough and adequate and the defendant failed to carry his burden of showing that further testing was necessary, the trial court's refusal to grant the motion was correct and this assignment lacks merit.
ASSIGNMENT OF ERROR NO. 2:
Defendant complains that prejudicial error occurred when his oral motion to have leg irons, handcuffs, and transport belt removed during trial was denied.
The standards for judging the propriety of use of restraints in the courtroom was explained in State v. Wilkerson, 403 So.2d 652 (La.1981), as follows:
"Ordinarily, a defendant before the court should not be shackled or handcuffed or garbed in any manner destructive of the presumption of his innocence and of the dignity and impartiality of judicial proceedings. Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970); State v. Clark, 340 So.2d 208 (La.1976); State ex rel. Miller v. Henderson, 329 So.2d 707 (La.1976). However, exceptional circumstances may require, within the discretion of the trial court, the restraint of the prisoner for reasons of courtroom security or order or where the prisoner's past conduct reasonably justifies apprehension that he may attempt to escape. State ex rel. Miller v. Henderson, supra; State v. Daniel, 297 So.2d 417 (La.1974).
"If the handcuffing is objected to at the time of trial, for a finding of reversible error the record must show an abuse of the trial court's reasonable discretion resulting in clear prejudice to the accused. State ex rel. Miller v. Henderson, supra."
The record reflects that defense counsel made a motion to remove the leg restraints, handcuffs and transport belt from defendant during trial. After ascertaining that no prospective jurors were present in the courtroom, the trial judge heard evidence on the motion. The State presented Harry Gaskey, Deputy of the Caddo Parish Sheriff's Department, who testified that Colvin had been restrained because of prior misbehavior in court and during transportation. He also noted that Colvin had attempted to escape twice to his knowledge. Additionally, Gaskey testified that Colvin made aggressive statements towards the judge in court at an earlier time and had to be forcibly removed from the courtroom.
To assure that the defendant's restraints were handled in the least obtrusive manner possible, the judge stated his intention to have defendant brought in and seated in the courtroom before the jury arrived. Likewise, the judge stated that the jury *1220 would be removed each day before Colvin left so that the restraints would not be obvious. The judge noted that both defendant's handcuffs and leg irons were partially concealed by the suit he was wearing when he arrived at court. Defendant had removed the coat before argument and the judge stated that he would allow a brief recess to allow Colvin to retrieve his coat. The defendant refused. Later in his instructions, the judge told the jury not to be prejudiced by the fact that the defendant was shackled and handcuffed during the trial.
The record establishes exceptional circumstances requiring restraint of the defendant for reasons of courtroom security and order. The trial court's discretion was reasonably exercised. Since the trial court was justified in refusing to allow removal of defendant's restraints, this assignment lacks merit.
ASSIGNMENT OF ERROR NO. 4:
Defendant submits that certain statements from the state's rebuttal witness, Dr. Paul Ware, were so prejudicial as to warrant a mistrial under LSA-C.Cr.P. Art. 771.
At trial, Dr. Ware testified as follows:
"Q. And are you saying that the best thing for his mental welfare and survival is not to be rescued from the consequences?
"A. That is the best things in terms of trying to make recommendation for his therapy, nothing to do with the law. He needs to be dealt with with facts and figures, and suffer the consequences of his actions. As long as he continues to manipulate the system, he will continue to hold onto to the belief that, `I can do that, I'm different and I'm special and I should be considered different.' There is no way that he can change with that happening.
"Q. Does that include the possibility of conviction and/or incarceration?
"A. Definitely, conviction and incarceration, all of the leaders in the treatment of anti-socials. They say they must go to jail. They must serve their time. We will treat them while they are in there in the closed system, but they must go and serve their time. They must pay the consequences for their behavior. They never had."
No objection was made contemporaneously with the testimony. An irregularity or error cannot be availed of after verdict unless it was objected to at the time of the occurrence. LSA-C.Cr.P. Art. 841. We also note that the statement does not relate to the defendant's guilt or innocence of the crime charged, but is the doctor's professional opinion as to the treatment for antisocial personalities. This assignment is without merit.
ASSIGNMENT OF ERROR NO. 5:
Defendant asserts that the trial court erred by not instructing the jury that the crime of armed robbery required specific intent.
No objection to the proposed jury instructions appears in the record. Since a contemporaneous objection by the accused is a necessary prerequisite to appellate review on an alleged inadequate jury charge, this assignment also lacks merit. State ex rel. Ross v. Blackburn, 403 So.2d 719 (La. 1981); State v. Mitchell, 319 So.2d 357 (La.1975). Notwithstanding the procedural deficiencies of this claim, we note that it also lacks substantive merit. The trial judge defined armed robbery in his charge and further defined each element of the crime. He gave the definition of theft, an element of armed robbery, and noted that an intent to permanently deprive is an essential element of that crime. This assignment lacks merit.
ASSIGNMENT OF ERROR NO. 6:
Assignment of Error No. 6 addresses the claim that defendant was denied effective assistance of counsel at his trial.
As appellant correctly notes in his brief, the issue of ineffective assistance of counsel is more properly raised by post-conviction attack, rather than by direct appeal. State ex rel. Bailey v. City of West Monroe, 418 So.2d 570 (La.1982); State v. Prestridge, *1221 399 So.2d 564 (La.1981); State v. Brown, 384 So.2d 983 (La.1980); State v. Malveaux, 371 So.2d 820 (La.1979); State v. Duplantis, 367 So.2d 858 (La.1979). State v. Barnes, 365 So.2d 1282 (La.1978), explains that the basis of this rule is to allow a district judge in a proper case to order a full evidentiary hearing.
Recently, the Louisiana Supreme Court has announced an exception to the rule that no claim of ineffective assistance of counsel will be entertained on direct appeal. In State v. Ratcliff, 416 So.2d 528 (La.1982), the trial court held a hearing on a motion for new trial containing an allegation of ineffective counsel. Because the claim was explored in detail by the trial judge and the record disclosed the evidence needed to decide the issue, the Supreme Court addressed the question in the interest of judicial economy. Ratcliff was followed in State v. Burkhalter, 428 So.2d 449 (La. 1983), where the Supreme Court found that no evidentiary hearing was necessary for determination of the effectiveness of trial counsel as review of defendant's ineffective assistance of counsel claim could be made on the record.
Both the First and Third Circuits have, however, distinguished Ratcliff. In State v. Buckenburger, 428 So.2d 966 (La.App. 1st Cir.1983), the First Circuit in a footnote recognizes Ratcliff but distinguishes it on the basis that the record in Ratcliff was sufficient for deciding the issue, but the present record reflected that the issue was not explored in detail below. The Third Circuit held that in the absence of a record sufficiently addressing the claim of ineffective counsel, an assignment of error based on such a claim presented nothing for review. State v. Willis, 438 So.2d 605 (La. App. 3d Cir.1983).
The defendant in the present case filed a pro-se motion for new trial. Along with other claims, he alleged that he was denied effective assistance of counsel. The trial judge denied this portion of the motion, explaining that trial court's representation of defendant did not fall below the constitutional minimum level. At the hearing on the motion, the judge summarized the actions of trial counsel in representing defendant. He stated that medical records were obtained and reviewed by the members of the Sanity Commission. Defendant was additionally examined by another physician retained by trial counsel. Witnesses were called by counsel to testify in defense and counsel cross-examined the State's witnesses. Counsel testified at the hearing, recounting the witnesses he had called. He also explained that his basic trial strategy was to show that defendant was psychotic at the time of the robbery. However, the court refused to allow defendant or his mother, who had hired trial counsel, to speak on this portion of the motion.
Defendant complains that trial counsel was ineffective in three specific respects: that trial counsel depicted defendant as a drug addict, a violent person, and a criminal, and allowed the state to do the same without objection; that trial counsel failed to make contemporaneous objections and move for a mistrial in numerous situations where the circumstances clearly required that such action be undertaken to protect defendant's rights; and that trial counsel failed to thoroughly question witnesses before and at trial.
We note that trial counsel's strategy was to establish that defendant was psychotic at the time of the commission of the offense and his trial tactics were generally consistent with that theory. We refrain, however, from addressing defendant's claim of ineffectiveness of counsel at this point. We believe that the merits of defendant's claim of ineffective representation cannot be adequately assessed on the basis of the record before us. The hearing on the motion for new trial was limited and defendant was represented at that hearing by the same counsel he, pro se, claimed to be ineffective.
The record in this case is not sufficient to base a finding of counsel's competence or incompetence. Defendant can raise the issue in an application for post-conviction relief where the possibility of a full evidentiary *1222 hearing exists to explore the issue of counsel's competence at trial.
ASSIGNMENT OF ERROR NO. 7:
Defendant claims that the denial of his motion for new trial on the basis of newly discovered evidence was error.
In a motion filed pro se, Colvin alleged that he should be granted a new trial on the basis of newly discovered evidence that he and Benny Brinkley were picked up by defendant's aunt, Martha Vassallo and her brother, John Bishop, at about 1:30 on the day of the robbery. He alleged that his aunt would testify that he was extremely intoxicated and had a bottle of alcohol with him. Brinkley had a gun. Colvin alleges that Vassallo would testify that she and Bishop took defendant and Brinkley to the Raven Bar on Mansfield Road and dropped them off. There, she allegedly saw defendant produce a handful of pink pills, a test tube and a hypodermic syringe. The defendant then melted down the pills and injected it into his vein. Colvin alleges that this testimony as to his condition and mental state hours before the robbery was relevant and justified the granting of a new trial.
The trial court denied the motion, as Martha Vassallo was available as a witness at trial. The trial judge ruled that the evidence was not newly discovered in the sense contemplated by LSA-C.Cr.P. Art. 851(3).
To grant a motion for new trial based on newly discovered evidence, the defendant must show that the evidence was not discovered before or during the trial despite the exercise of reasonable diligence, and that had the evidence been introduced at trial the jury probably would have returned a different verdict. State v. Bell, 377 So.2d 275 (La.1979). The test applied is not whether a new jury might return a different verdict, but whether the additional evidence is so material that it ought to present a different result. State v. Chapman, 410 So.2d 689 (La.1981); State v. Naas, 409 So.2d 535 (La.1981), cert. denied 457 U.S. 1119, 73 L.Ed.2d 1332, 102 S.Ct. 2933. The decision of the trial judge regarding the newly discovered evidence is accorded great weight and should not be disturbed on appeal absent a clear showing of abuse of discretion. State v. Spell, 399 So.2d 551 (La.1981).
At the hearing on the new trial motion, it was determined that Martha Vassallo was present in the courtroom during the trial. Allegedly, the defendant because of his intoxicated state did not remember being picked up by his aunt. Defense counsel stated that when he questioned Mrs. Vassallo she only corroborated other testimony as to Colvin's drug usage and drinking. He claimed that the information concerning drug usage on the day of the robbery was not brought to either his or his client's attention until after the trial.
In State v. Ratcliff, supra, the Supreme Court ruled that evidence defendant discussed with her attorney at trial was not newly discovered evidence within the meaning of LSA-C.Cr.P. Art. 851(3). Likewise, the alleged available testimony in the present case does not appear to be "newly discovered" within the contemplation of the code article because it might have been elicited from defendant's aunt, who was available at trial and questioned by defense counsel. Further, if the evidence is considered new evidence it is highly doubtful that its introduction would produce a different verdict. Each of the four employees of the Sausage & Cheese Shop testified that the man who entered the store with the gun and demanded money did not appear intoxicated but was steady on his feet and did not smell of alcohol. The trial judge specifically found that even if the evidence had been introduced, it was questionable whether a different verdict would have been reached. The trial judge did not abuse his discretion in denying the motion for new trial on the basis of newly discovered evidence and, accordingly, this assignment lacks merit.
ASSIGNMENT OF ERROR NO. 10:
Defendant claims that error occurred when he was sentenced less than 24 hours after denial of his new trial motion without *1223 having waived that delay in contravention of LSA-C.Cr.P. Art. 873.
This delay period may be waived by defendant but this waiver must be expressed in the record. State v. Kelly, 375 So.2d 1344 (La.1979); State v. Sykes, 364 So.2d 1293 (La.1978). The minutes of court reflect that defendant was convicted on April 28, 1983. Thereafter, on May 27, 1983, the defendant filed a motion for new trial and motion in arrest of judgment. These motions were argued and denied. The same day, a supplemental motion for new trial and motion in arrest of judgment were filed and sentencing was set for June 2, 1983. On that day, argument was had on the motions. They were denied and defendant was sentenced.
Until recently, the jurisprudence was strict in mandating remand for reimposition of sentence when the 24 hour delay rule of Art. 873 was violated. See for example State v. Kelly, supra; State v. Young, 337 So.2d 1196 (La.1976). However, the Supreme Court in State v. White, 404 So.2d 1202 (La.1981) refused to remand for compliance with Art. 873, noting:
"Although C.Cr.P. Art. 873 unequivocally requires the trial court to delay imposition of sentence for a period of at least 24 hours after denial of post-trial motions, there has been no objection raised regarding the sentence imposed in this case and no showing or suggestion that defendant was prejudiced by the failure to observe the delay....
"... The time lapsed between the defendant's conviction, March 18, 1980, and the date on which sentence was finally imposed, May 30, 1980, was substantial. There are no indications that defendant's sentence was hurriedly imposed without due consideration. Indeed, the minutes of March 18, 1980 reflect that a pre-sentence investigation was ordered.
"A remand would only serve to lengthen unnecessarily the already substantial delays involved in this case and would in no way further the goal of achieving a fair and just decision on either verdict or sentence. It is illogical for this court to remand for the reimposition of sentence merely because there is an `error' in the minutes' lack of an affirmative waiver of the 24-hour delay. Just as nonprejudicial violations of the accused's statutory rights do not mandate reversal, an error in procedure which does not affect the fundamental fairness of the process does not necessarily require reversal and remand, unless prejudice is shown."
Although the lack of compliance with LSA-C.Cr.P. Art. 873 was noticed by the Supreme Court in White as an error patent and not as an assigned error, the requirement that the defendant show prejudice in order to obtain relief applies to cases where the defendant assigns as error a lack of sentencing delay and complains of his sentence, as in the present case. The defendant in State v. Brogdon, 426 So.2d 158 (La.1983), assigned as error the failure to comply with sentencing delay and complained of his sentence. The Supreme Court found that the record indicated that the delays had been met by the trial court but noted in dicta, citing White, that failure of the trial court to wait the entire 24 hour period before imposing sentence was harmless error absent a showing that the failure to observe the delay caused the defendant to suffer some actual prejudice. The White requirement that the defendant must show actual prejudice was cited with approval by this court in State v. Keleman, 444 So.2d 1328 (La.App. 2d Cir.1984). See also State v. Freeze, 438 So.2d 1340 (La. App. 3d Cir.1983).
Defendant fails to allege any prejudice to his rights resulting from the trial judge's failure to observe the 24-hour sentencing delay. To the contrary, the record shows that more than a month elapsed between his conviction and imposition of sentence. A pre-sentence investigation was additionally prepared. Further, the record reflects that after the hearing on the first motion for new trial held on May 27, 1983, the Court stated that because he was aware that defendant wanted a delay between overruling of the motion and sentencing, he would set the sentencing date *1224 for June 2, 1983. Considering the foregoing, no prejudice to defendant's rights occurred as a result of the trial judge's failure to observe the 24 hour delay after the denial of the supplemental motion for new trial before imposing sentence. This assignment, therefore, is without merit.
ASSIGNMENT OF ERROR NO. 11:
Defendant claims that his sentence to serve 80 years at hard labor without benefit of parole, probation, or suspension of sentence is excessive.
It is well-settled that the sentencing judge is given wide discretion in imposing a sentence within the statutory limits and such a sentence should not be set aside as excessive in the absence of a manifest abuse of discretion by the sentencing judge. State v. Hammonds, 434 So.2d 452 (La.App. 2d Cir.1983); State v. Brooks, 431 So.2d 865 (La.App. 2d Cir. 1983); State v. Square, 433 So.2d 104 (La. 1983).
The sentencing guidelines of LSA-C.Cr.P. Art. 894.1 provide the criteria to consider in determining whether a sentence is excessive. State v. Tully, 430 So.2d 124 (La.App. 2d Cir.1983); State v. Sepulvado, 367 So.2d 762 (La.1979). While the trial judge need not articulate every aggravating and mitigating circumstance outlined in Art. 894.1, the record must reflect that he adequately considered these guidelines in particularizing the sentence to the defendant. State v. Hammonds, supra; State v. Cunningham, 431 So.2d 854 (La.App. 2d Cir.1983); State v. Smith, 433 So.2d 688 (La.1983).
In his detailed sentencing reasons, the trial judge emphasized the fact that the defendant terrorized the victims of the armed robbery. He noted that a lengthy sentence was necessary based on the instant facts so that the seriousness of the offense was not deprecated. The judge also expressed his belief that if defendant was not incarcerated for a substantial period of time, he would commit another offense.
At sentencing, the defendant failed to indicate remorse or regret, which fact was noted by the trial judge. The Court found no factors present in the record which would mitigate the circumstances of the offense. He found that there was an obvious threat of serious harm created by the defendant's conduct and that defendant must have contemplated this possibility of serious harm.
The trial judge stated that neither the defendant's drug use or his claim of insanity mitigated the danger he posed to society. He found from the medical evidence presented at trial that defendant was antisocial and extremely dangerous and pointed out that even his family was frightened of him. He specifically stated that Colvin knew the difference between right and wrong.
Defendant's lengthy criminal history, consisting of adult and juvenile offenses including both state and federal charges, was emphasized by the trial judge. Considering the defendant's criminal record, as well as his propensity for violence as demonstrated by the trial transcript, the judge did not abuse his discretion in sentencing defendant, a third felony offender, to 80 years at hard labor.
ASSIGNMENT OF ERROR NO. 12:
By this assignment, defendant argues that his pre-sentence investigation contains inaccurate and highly prejudicial information which was relied upon by the judge in sentencing him and which he had no opportunity to review and explain.
Trial counsel objected at trial to Colvin's sentence but made no request to review or counter any unfavorable information contained in the pre-sentence investigation. Appellate counsel suggests that no request was made because trial counsel was unaware that a pre-sentence investigation was prepared. However, it is noted that the trial judge referred to the report in his sentencing reasons.
The defendant must be given the opportunity to rebut substantially significant false information which is relied upon *1225 by the trial court in imposing a heavy sentence. State v. Underwood, 353 So.2d 1013 (La.1977); State v. Trahan, 367 So.2d 752 (La.1978); State v. Roberts, 427 So.2d 1300 (La.App. 2d Cir.1983). However, in the absence of a timely request for the report and a showing that false information was included in the report, there is no error in the Court's failure to give a copy of the report. State v. Grey, 408 So.2d 1239 (La.1982); State v. Boone, 364 So.2d 978 (La.1978), cert. denied 444 U.S. 825, 100 S.Ct. 46, 62 L.Ed.2d 31.
Previously, it was noted that no request to see the report was made by defendant's trial attorney. Furthermore, although defendant submits that the summary of his criminal activity given by the judge at the sentencing hearing was inaccurate and misleading because the judge erroneously concluded that the defendant was arrested and convicted more times than his actual record reflects, no inaccuracies appear to exist. The summary was taken by the judge from the pre-sentence investigation. The pre-sentence investigation tracks the FBI rap sheet.
Defendant also claims that it has come to his attention that the report contains a threat by the defendant on the life of the trial judge, which threat defendant denies ever having made. The probation officer who handled the investigation into Colvin's background stated that Colvin told him to "tell the judge that when I get out of here, I am going to give him the same thing he gives me." When asked to clarify the statement, Colvin stated, "I intend to give him a case of lead poisoning."
The trial judge does not rely on this threat in his reasons for sentencing, but does, however, note defendant's propensity for dangerous behavior. Later, when considering trial counsel's request to withdraw as counsel of record, the judge granted the request, stating that defendant had sought throughout the proceedings to intimidate his lawyer, the court, the psychiatrists who interviewed him, and everyone else he had come in contact with since his arrest.
In a previous assignment, it was brought out that Colvin had to be removed from the courtroom because of aggressive comments directed towards the judge. Additionally, Colvin informed the Court that trial counsel would be unavailable for the sentencing hearing on June 2, 1983 "because I am going to have him shot."
Since defense counsel did not request a copy of the presentence investigation or an opportunity to explain or rebut the information contained therein; because the information on his criminal record appears to be accurate; and since the record fully documents the defendant's propensity for violence and verbal threats, this assignment lacks merit.
The record discloses no error which warrants reversal. Accordingly, the conviction and sentence of defendant are affirmed.
Affirmed.