WILLIAMS, J.
I,The defendant, Calvin Mitchell, was convicted of second degree murder and attempted manslaughter, violations of LSA-R.S. 14:30.1, LSA-R.S. 14:31 and LSA-R.S. 14:27. The trial court granted the defendant’s motion for a post-verdict judgment of acquittal and reduced the second degree murder conviction to manslaughter. The court sentenced the defendant to serve 14 years in prison at hard labor for the manslaughter conviction and six years at hard labor for the attempted manslaughter conviction (to be served concurrently). On appeal, this court affirmed the attempted manslaughter conviction and sentence, reversed the manslaughter conviction, reinstated the second degree murder conviction and remanded the matter to the trial court for resentencing. State v. Mitchell, 39,305 (La.App. 2d Cir.2/17/05), 894 So.2d 1240, writ denied, 2005-0741 (La.6/3/05), 903 So.2d 457. On August 15, 2006, the defendant was sentenced to life in prison at hard labor without benefit of probation, parole or suspension of sentence.
Subsequently, the defendant filed an application for post-conviction relief on the ground of ineffective assistance of counsel.[1] The trial court granted relief and, again, reduced the second degree murder conviction to a manslaughter conviction. For the reasons set forth herein, we reverse the trial court’s ruling and reinstate the defendant’s conviction of second degree murder and sentence of life in prison at hard labor without benefit of | ¿probation, parole or suspension of sentence.
FACTS
On April 14, 2000, the defendant, Eric Persley, Billy Smith and Demetrius Chris-taw[2] visited a nightclub in downtown Shreveport. The four men drove to the club in Persley’s vehicle. While in the club, Smith engaged in a verbal altercation with at least two unidentified patrons of the nightclub which later escalated into a physical altercation. The defendant was not involved in either the verbal or the physical altercation. The defendant, Pers-ley, Smith and Christawwere ejected from the club and returned to Persley’s vehicle.[3] The defendant got into the driver’s seat and Christaw entered the rear passenger seat. Persley and Smith retrieved semiautomatic pistols from the vehicle and began firing into a crowd of people standing near the entrance of the club. Rodrigues Rusely, an innocent bystander, was shot and killed.
After the shooting, Persley entered the back seat of the vehicle on the driver’s side and the vehicle began to move forward. Police officers who had arrived on the scene attempted to secure the vehicle and shouted for the defendant to stop the car. *322 The defendant accelerated in the direction of one of the officers. The officers fired their weapons into the car, striking the defendant in the face. The vehicle stopped abruptly, and Persley and the defendant were arrested.[4]
|sThe defendant was charged with the second degree murder of Rusely and attempted first degree murder of the police officer. Persley was charged with the second degree murder of Rusely. They were tried separately, and the defendant was convicted as charged. After the defendant’s conviction, but prior to his sentencing, Persley was convicted of manslaughter.[5]
As stated above, the trial court granted the defendant’s motion for a post-verdict judgment of acquittal and reduced the second degree murder conviction to manslaughter. This court reversed the court’s ruling and reinstated the second degree murder conviction. Subsequently, the defendant filed for post-conviction relief on the basis of ineffective assistance of counsel. An evidentiary hearing was held, during which several witnesses testified.
Bobby Bates, the defendant’s uncle, testified that he saw the defendant on the night of the shooting and the defendant told him that he did not want to go to the nightclub. Maxine Simpson, the defendant’s grandmother, testified that she overheard the defendant talking to Bates that night, but the defendant never asked her to testify because she did not “know anything.”
The defendant testified that he told Kurt Goins, his trial counsel, numerous times that he wanted to testify at his trial and even “pleaded with” 14Goins to allow him to testify. He also stated that Goins failed to explain anything about the trial to him. Further, the defendant testified that he gave Goins the names of several people he thought would be beneficial witnesses and that Goins never contacted them. On cross-examination, the defendant testified with regard to what he would have said had he been called to testify during his trial, including his version of the events that took place on the night of the shooting.
Goins testified with regard to his trial strategy and alleged ineffectiveness. He testified that the defendant never told him that he wanted to testify at the trial. Goins stated that he met with the defendant at least five times prior to trial and they discussed at length whether the defendant should testify. Goins testified as follows:
Basically, the discussion or discussions entailed what I usually tell clients in those situations are the pluses and minuses of testifying. Pluses, you get to tell your side of the story. Minuses, you’re subject to cross examination by the prosecution who may gain evidence that’s helpful to the prosecution.
On the other hand, if one does not testify, if you don’t you’re not subject to cross examination but you don’t get to tell your side of the story. One advantage is if one has a record, that does not come out if one testifies [sic]. If you do *323 testify, that comes out. I’m trying to think of what’s another topic. And in some cases it’s better not to testify because there’s gaps and weaknesses in the state’s case, and if the defendant testifies he runs the risk of filling these gaps and thus being convicted.
Goins also testified that he felt that the evidence elicited at trial was not sufficient to convict the defendant of second degree murder because the state failed to prove that the defendant was a shooter, that he provided a gun to the shooter, or that he told anyone to shoot. Goins opined that “a bad jury | ¡¡verdict” was the reason the defendant was convicted of second degree murder and the actual shooter was not. Goins expressed his belief that “the State’s argument refuted itself,” explaining, “When you’re in that position, you don’t want to take the risk of adding to it with the defendant or the witnesses. I have seen that happen.”
In a ruling issued on July 10, 2008, the trial court denied the defendant’s request for post-conviction relief in part and granted it in part. The court found that the defendant had ineffective assistance of counsel with regard to the second degree murder conviction, but not with regard to the attempted manslaughter conviction. In its reasons for judgment, the court stated:
This Court prefaces this Opinion by emphasizing it steadfastly believes that based upon the evidence presented during the August, 2003, jury trial, Petitioner should not have been convicted of Second Degree Murder. With all due respect of the review and remand by the Court of Appeal, Second Circuit, this Court has also had the opportunity to preside over two jury trials involving one of the actual shooters, Eric Persley [footnote omitted]. The first jury trial resulted in a mistrial and the second jury trial resulted in a conviction of Manslaughter.
This Court believed then and still believes now that a Manslaughter conviction should have been the correct verdict based upon the evidence presented. This Court further reasons that: 1.) If the actual shooter could not have been proved to have had “specific intent to kill or inflict great bodily harm” then CALVIN MITCHELL could not have had “specific intent to kill or inflict great bodily harm” as a principal and/or; 2.) In an occurrence when both the actual shooter and his principal are tried by juries, the supposition should be that an injustice has been done to the principal who is found guilty of a[sic] offense requiring “specific intent” when the actual shooter did not have “specific intent.” 1 (Additionally, this Court observed and recalls the demeanor of Petitioner’s Trial Counsel during the jury trial and the impression he made before the jury when he either failed to cross-examine certain State witnesses or at the very least cross-examined to a reasonable minimum certain State witnesses. The impression before the jury alone appeared to destroy the presumption of Petitioner’s innocence.
(Emphasis in original).
The court considered the evidence presented at the hearing in conjunction with the defendant’s claim of ineffective assistance of counsel and concluded that defense counsel could have reasonably chosen not to call the witnesses that the defendant alleged would have helped his case. The court also found that the defendant was not prevented from testifying in his own defense, but rather counsel convinced the defendant it would not be in his best interest to testify. However, the court found that trial counsel was ineffective with regard to the failure *324 to cross-examine some of the state’s witnesses and with regard to a statement made during trial counsel’s closing argument.
Concerning trial counsel’s failure to cross-examine 14 of the 22 witnesses for the state, the trial court stated:
[T]his Court found perplexing Goins’ strategy of not asking questions to such a significant number of the State witnesses. From a trial court’s vantage point, Goins’ failure to cross-examine said State witnesses constituted insufficient performance, specifically given the burden in the State’s case to prove that Petitioner was a principal who had “specific intent to kill the victim.”
(Emphasis in original). The trial court also discussed the specific instances in which trial counsel failed to cross-examine witnesses, including several of the police officers involved in the incident. The court stated:
|7The State is correct that Petitioner shall carry the burden. However, based upon the testimony of Goins and certain referenced portions of the jury trial transcript, this Court believes Petitioner has adequately shown Goins’ “no cross-examination” strategy was deficient and erroneous to employ. In light of the consequences upon Petitioner, this Court should not give deference to Goins’ reliance upon his long-standing three-pronged practice principles for cross-examination. Specifically, given the State’s contention that Petitioner acted as a principal with a “specific intent”, [sic] Goins should have done more than ask a few witnesses a few questions, or most witnesses no questions. This Court is not second guessing or making its determination based on hindsight. State v. Brooks, 505 So.2d 714 (La.1987).
Additionally, the court considered the defendant’s claim with regard to trial counsel’s closing argument.[6] The court stated:
[Trial counsel’s] argument to the jury that Petitioner was “loyal” to the actual shooter, Persley, and Petitioner was “lying” to protect his friends. By doing so, [PosWjonviction Relief] Counsel asserted that Goins was in effect attaching Mitchell to Persle/s actions as if Petitioner had “specific intent” to aid and abet Persley in the commission of Pers-ley’s crimes.
[[Image here]]
A closing argument which did not distant [sic] Petitioner from the actual shooter, Persley, but instead gave the appearance of connection [sic] Petitioner to the shooter through loyalty was tantamount to agreeing Petitioner was a principal. Such a closing argument was unconscionable and constituted serious counsel error.
The court concluded that the defendant’s conviction should not be overturned in its entirety, but rather, that his second degree murder conviction should be reduced to a conviction for manslaughter. The court entered an order in accordance with its ruling.
|sThe state filed an application for a supervisory writ of review with this court. We granted the writ to review the correctness of the trial court’s ruling.[7]
*325 DISCUSSION
The state contends the trial court erred in concluding that the defendant met his burden of proving ineffective assistance of counsel. The state argues that certain choices made by trial counsel throughout the course of the trial, including the decision not to call or cross-examine many of the state’s witnesses and the remarks made during closing arguments, did not constitute ineffective assistance of counsel.
The right of a defendant in a criminal proceeding to the effective assistance of counsel is mandated by the Sixth Amendment to the U.S. Constitution. State v. King, 2006-1903 (La.10/16/07), 969 So.2d 1228; State v. Wry, 591 So.2d 774 (La.App. 2d Cir.1991). A claim of ineffectiveness of counsel is analyzed under the two-prong test developed by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
To establish that his attorney was ineffective, the defendant first must show that counsel’s performance was deficient. This requires a showing |nthat counsel made errors so serious that he was not functioning as the “counsel” guaranteed the defendant by the Sixth Amendment. The relevant inquiry is whether counsel’s representation fell below the standard of reasonableness and competency as required by prevailing professional standards demanded for attorneys in criminal cases. Strickland, supra. The assessment of an attorney’s performance requires his conduct to be evaluated from counsel’s perspective at the time of the occurrence. A reviewing court must give great deference to trial counsel’s judgment, tactical decisions, and trial strategy, strongly presuming he has exercised reasonable professional judgment. State v. Grant, 41,745 (La.App. 2d Cir.4/4/07), 954 So.2d 823, writ denied, 2007-1193 (La.12/7/07), 969 So.2d 629; State v. Moore, 575 So.2d 928 (La.App. 2d Cir. 1991). See also, State v. Tilmon, 38,003 (La.App. 2d Cir.4/14/04), 870 So.2d 607, writ denied, 2004-2011 (La.12/17/04), 888 So .2d 866.
Second, the defendant must show that counsel’s deficient performance prejudiced his defense. This element requires a showing the errors were so serious as to deprive the defendant of a fair trial, i.e., a trial whose result is reliable. Strickland, supra. The defendant must prove actual prejudice before relief will be granted. It is not sufficient for the defendant to show the error had some conceivable effect on the outcome of the proceedings. Rather, he must show that but for counsel’s unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. Strickland, supra; State v. Pratt, 26,862 (La.App. 2d Cir.4/5/95), 653 So.2d 174, writ denied, 95-1398 (La.11/3/95), 662 So.2d 9. A 110defendant making a claim of ineffective assistance of counsel must identify certain acts or omissions by counsel which led to the claim; general statements and conclu-sory charges will not suffice. Strickland, supra; State v. Jordan, 35,643 (La.App. 2d Cir.4/3/02), 813 So.2d 1123, writ denied, 2002-1570 (La.5/30/03), 845 So.2d 1067.
*326 In this case, the state contends the decision “to call or not call” witnesses is a matter of trial strategy and is not, per se, evidence of ineffectiveness; therefore, the decision not to cross-examine a witness is merely an extension of that principle. On the other hand, the defendant argues that the record is replete with examples of trial counsel’s ineffectiveness, such as the failure to object to portions of the testimony of the police officers, the failure to adequately cross-examine the officers with regard to inconsistencies in their stories and the failure to cross-examine 14 out of 22 witnesses for the state.
At the hearing, Goins testified with regard to his strategy on cross-examining witnesses as follows:
Well, as I was taught long ago and have used in my practice, cross examination serves three purposes, one discredit the witness, two discredit the witness’ story or testimony, or three, gain information that’s helpful to your case. Most of the time is spent using purpose number three. If a witness does not serve or you cannot accomplish one of these purposes in cross-examination, you don’t cross examine a witness.
[[Image here]]
It does have risks and also if the witness does not hurt you there’s no need to cross examine him. Or also, if the witness testifies to facts that are not no [sic] dispute you don’t cross examine.
|T1In State v. Brooks, 505 So.2d 714 (La. 1987), cert. denied, Brooks v. Louisiana, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987), the defendant claimed that his trial counsel was ineffective for failing to conduct cross-examination of any witnesses. The Court concluded that the actions of the trial counsel did not constitute ineffective assistance of counsel, stating:
The record indicates that the decision to employ a “no question defense” was a deliberate one. It appears to be more a product of trial strategy than the result of poor preparation or incompetent representation. ...
[[Image here]]
While opinions may differ on the advisability of such a tactic, hindsight is not the proper perspective for judging the competence of counsel’s trial decisions. Neither may an attorney’s level of representation be determined by whether a particular strategy is successful. In this case, we do not find that counsel’s “no question defense” although unsuccessful constituted ineffective assistance of counsel.
Id. at 724 (internal citation omitted).
In State v. Thomas, 1999-1658 (La.App. 4th Cir.12/29/99), 750 So.2d 1114, writ denied, 2000-2503 (La.8/31/01), 795 So.2d 1203, the court considered the issue of failure to cross-examine witnesses, stating:
The defendant points to the lack of or limited cross-examination by counsel; however, such decisions are usually considered strategy. If an alleged error falls “within the ambit of trial strategy,” it does not “establish ineffective assistance of counsel.” Moreover, as opinions may differ on the advisability of a tactic, hindsight is not the proper perspective for judging the competence of counsel’s trial decisions. Neither may an attorney’s level of representation be determined by whether a particular strategy is successful.
Id. at 1124 (internal citations omitted).
hgWe reverse the trial court’s conclusion that trial counsel’s failure to cross-examine many of the witnesses for the state constituted ineffective assistance of counsel. As noted above, the supreme court has held that the choice to ask no *327 questions can be a reasonable trial strategy that will not render trial counsel’s assistance ineffective. There is no indication in the record that Goins’ decision with regard to the cross-examination of witnesses was a result of incompetence. It is apparent from the testimony that Goins made a deliberate decision not to cross-examine the witnesses. Goins testified that his decision to not ask questions of those witnesses was based on his 20 years of criminal defense work as well as his understanding of the usefulness of cross-examination. As the Louisiana Supreme Court stated in Brooks, supra, while the advisability of Goins’ strategy may be questioned in hindsight, that is not the proper perspective from which to judge the effectiveness of counsel. Thus, we find that the trial court erred in failing to defer to trial counsel with regard to his decisions concerning the cross-examination of witnesses. Further, even if the failure to cross-examine the 14 witnesses did meet the first prong of the Strickland test, the defendant has failed to prove that, but for counsel’s errors, the result would have been different.
Further, we find that the trial court erred in finding that trial counsel’s use of the phrase “misplaced sense of loyalty” during his closing arguments rendered his assistance ineffective. Goins explained his remarks as follows:
Well, one of the State’s arguments is that Eric Persley gave [the defendant] the keys to the car and said get in the car. And one of the State’s arguments was — they were trying to bolster their case by saying he took thejjkeys, he got in the car, he must have known what was happening. And I was trying to say, no, that’s all that happened, he stayed there because it was a friend of his, not that he wanted someone killed, that’s what I was driving at, to refute the state’s argument.
In State v. Legrand, 2002-1246 (La.12/3/03), 864 So.2d 89, the defendant was charged with first degree murder. During his opening statement, defense counsel stated, “Michael Legrand is guilty of second degree murder.” The Court found that the statement did not constitute ineffective assistance of counsel because counsel was attempting to persuade the jury that the defendant was guilty of the lesser included offense of second degree murder.
In State v. Hoffman, 98-3118 (La.4/11/00), 768 So.2d 542, defense counsel remarked: “[A]nd the State has got a strong case, and maybe you say to yourself, well, what are you doing standing up there ... And much to your surprise, perhaps, the Judge is also going to instruct you on not guilty.” The Louisiana Supreme Court stated:
Given the defense strategy of conceding the defendant’s involvement, however, these comments do not appear prejudicial. It is certainly plausible that an attorney defending someone with such a mountain of incriminating evidence against him would be willing to not highly contest guilt in hopes of gaining credibility for a more lenient sentence.
Id. at 578-79 (internal citations omitted).
In State v. Berry, 430 So.2d 1005 (La. 1983), the defendant alleged he was denied effective assistance of counsel based upon the following remarks made by defense counsel during his opening statement:
From the very beginning we will concede to you or I will concede to you on behalf of Ben Berry that he did intend to rob a branch of the Metairie Bank....
*328 [[Image here]]
I’m not suggesting to you that he is innocent of a crime, but I’m asking you to presume, at least at this point, that he may be innocent of the crime of first degree murder.
The court rejected the defendant’s claim of ineffective assistance of counsel, stating:
It is argued that [trial counsel] admitted his client’s guilt. This is incorrect. The first remark is a comment on an obvious and inescapable fact; counsel may have been trying to establish his candor with the jury. The second remark forms part of the theme of the opening statement: Berry, although culpable, was not guilty of First Degree Murder. Narrowing the presumption of innocence claim to the charge of first degree murder was intended to direct the jury toward a lesser verdict. Read in context these statements are not violations of the attorney’s duty.
Id. at 1014.
In State v. Burkhalter, 428 So.2d 449 (La.1983), defense counsel stated that the defendant had committed second degree murder. The court found that the remark did not constitute ineffective assistance of counsel when the defendant had been charged with first degree murder for the killing of a police officer in the line of duty and counsel effectively saved the defendant’s life using this argument.
In State v. Colvin, 452 So.2d 1214 (La. App. 2d Cir.1984), the defendant claimed that his trial counsel was ineffective for “depicting] defendant as a drug addict, a violent person, and a criminal and allowing] the state to do the same without objection.” Colvin, 452 So.2d at 1221. This court found that trial counsel’s strategy was to establish defendant as psychotic at the time of the crime “and his trial tactics were generally | ^consistent with that theory.”[8]
In State v. Holmes, 95-0208 (La.App. 4th Cir.2/29/96), 670 So.2d 573, the defendant claimed that during closing argument, his counsel “informed the jury that the [defendant] admitted to him that he committed the crime.” The court found that the defendant had not shown ineffective assistance of counsel, stating:
Trial counsel used the only possible defense to help explain why his client cashed a stolen S.S.I. check from an elderly man. Counsel’s strategy was to win the sympathy of the jury by telling them that he was only a minor player. A trial counsel’s trial strategy does not constitute ineffective assistance of counsel.
Id. at 577 (internal citations omitted).
In the present case, it was clear that trial counsel could not refute the defendant’s presence at the scene of the crime. Therefore, he attempted to associate the defendant with his friends, while at the same time, attempting to distance the defendant from the actions of his friends. While the strategy was obviously unsuccessful, we find no basis in the trial court’s determination that the trial strategy constituted ineffective assistance. As noted above, hindsight is not the appropriate vantage point from which to judge the ineffectiveness of trial counsel. Accordingly, we reverse the trial court’s determination that the defendant was denied effective assistance of counsel with regard to his conviction for second degree murder.[9]
*329 j ^CONCLUSION
For the foregoing reasons, we reverse the trial court judgment finding ineffective assistance of counsel and reducing the defendant’s conviction to manslaughter. We reinstate the defendant’s conviction of second degree murder and sentence of life in prison without benefit of probation, parole or suspension of sentence.
REVERSED; CONVICTION REINSTATED; SENTENCE REINSTATED.

.The defendant raised an ineffective assistance claim on appeal which this court declined to consider. This court concluded that the claim would be more properly raised in an application for post-conviction relief in the trial court, so that "trial counsel can be given the opportunity to explain the motives behind his actions or omissions.” State v. Mitchell, supra, 894 So.2d at 1253.

. In some portions of the record, Christaw's name is spelled "Christoph.”

. At the post-conviction relief hearing, the defendant denied being ejected from the club. He testified that the others were ejected but he left of his own volition.

. Smith fled the scene on foot and was killed in another shooting several months later. Christaw also left the scene and was never arrested.

. Persley was tried twice for the offense. The first trial resulted in a mistrial, and the second trial resulted in a manslaughter conviction. He was sentenced to serve 35 years in prison at hard labor without benefit of parole, probation or suspension of sentence. On appeal, this court affirmed Persley’s conviction, amended the sentence to delete the trial court's prohibition of parole and affirmed the sentence as amended. State v. Persley, 40,271 (La.App. 2d Cir. 12/16/05), 918 So.2d 491.

. We note this claim was not mentioned in the application for post-conviction relief, but was raised during the defendant’s argument before the trial court.

. The defendant filed an opposition to the state's writ application, enumerating two assignments of error: (1) “the trial court erred in not finding that the trial counsel [sic] failure to call Calvin Mitchell as a witness consti *325 tuted ineffective assistance of counsel as to the second degree murder conviction and attempted manslaughter conviction;” and (2) "the trial court erred in not finding that trial counsel ineffective counsel [sic] should have been applied to his attempted manslaughter verdict.” The defendant also filed a pro se "brief in support of original brief filed” by his attorney. However, neither defense counsel nor the defendant filed a writ application in this court challenging any portion of the trial court’s ruling; therefore, these arguments will not be considered in this opinion.

. This court refrained from fully addressing the defendant's claims of ineffective assistance of counsel, preferring to defer the question to a post-conviction relief action.

. We also find merit in the state's argument that the trial court "erred legally and factually and has improperly circumvented” this court’s finding that second degree murder *329 was the correct verdict for this defendant. Even if the court had properly determined that the defendant did not receive effective assistance of counsel, the appropriate remedy would have been to reverse his conviction and order a new trial. Seemingly, the trial court's determination that the defendant's conviction for second degree murder was unwarranted was based upon the fact that Persley, the actual shooter, was only convicted of manslaughter. This issue was addressed in State v. Irvine, 535 So.2d 365 (La. 1988), and the court stated:
There is no injustice in punishing one of two guilty principals when the jury has possibly miscarried justice by acquitting the other guilty principal on the basis of mistake, compromise, lenity or nullification. At most, there is only the illusory appearance of injustice which is nothing more than intellectual discomfort with an imperfect system of criminal justice.... [D]ue process does not require permitting the defendant to obtain an acquittal on the basis of the inconsistent verdict.
Id. at 369; See also, State v. .Davis, 31,711 (La.App. 2d Cir.3/31/99), 732 So.2d 612.