416 So.2d 528 (1982)
STATE of Louisiana
v.
Betty Jean RATCLIFF.
No. 81-KA-2197.
Supreme Court of Louisiana.
June 21, 1982.
*529 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Carl Parkerson, Dist. Atty., Lavalle Salomon, John R. Harrison, Nancy Gilliland and Vicki Green, Asst. Dist. Attys., for plaintiff-appellee.
Paul Henry Kidd, Monroe, for defendant-appellant.
CALOGERO, Justice.[*]
In this appeal from her conviction for attempted second degree murder, Betty Jean Ratcliff argues that the trial court erred in denying her motion for a new trial, grounded on allegations of ineffective assistance of counsel, newly discovered evidence, admission of hearsay and admission of evidence of another crime. Defendant also contends that the trial court imposed an inadequately reasoned, excessive sentence. Because we find that these assignments of error are without merit, we affirm defendant's conviction and sentence.
By bill of information the state charged defendant with the attempted second degree murder of one Danny Wayne Zeigler in violation of La.R.S. 14:30.1 and La.R.S. 14:27. Following trial, the jury found defendant guilty as charged. The trial judge denied defendant's motion for a new trial. After ordering and reviewing a pre-sentence investigation report, the trial judge sentenced defendant to twenty-five years at hard labor. Defendant's appeal of her conviction and sentence assigns three errors to the proceedings below.
At trial, Danny Zeigler, the victim, related that at the time of the offense he was married to, but had been separated from, defendant's daughter Charlene. Zeigler testified that on April 1, 1980, he had gone to the Shorewood Village Trailer Park in West Monroe to visit his wife. After a brief conversation, the two went to get something to eat and returned to the trailer about dusk. Zeigler said that he and his wife were in the trailer when he saw defendant at the front door. According to Zeigler, defendant "throwed a gun in my face at the door, and I turned around to run, and she grabbed me and I couldn't get away from her." Zeigler stated that he did not remember what happened next, but did know that he had been shot through the shoulder and through the back of the head. Zeigler admitted that he carried a gun in his boot because he was afraid of defendant and her family. Although his memory of the evening was hazy, Zeigler said that, to the best of his memory, the gun remained in his boot.[1]
Mrs. Elizabeth Chenevert, who lived in the trailer next to the one occupied by the Zeiglers, was an eye witness to the shooting. She testified that she saw defendant in the doorway of the trailer holding Zeigler. Mrs. Chenevert said that defendant's arm was up but that she could not see what defendant had in her hand. As defendant *530 pushed Zeigler out of the trailer door, Mrs. Chenevert was able to see a gun in defendant's hand. Mrs. Chenevert stated that she could see defendant very clearly when defendant, with the gun at the back of the victim's head, shot Zeigler.
Members of the Ouachita Parish Sheriff's Department who investigated the shooting testified that they found a cocked .357 magnum revolver, with two spent shells in the cylinder, on the hood of defendant's truck which was parked beside the trailer. In addition to the spent shells, the gun had a live round of ammunition under the hammer and three more live rounds ready for firing. Medical testimony established that Zeigler had been shot twice at close range (approximately one to two feet), once in the head and once in the upper arm area. Brain tissue was exiting from the head wound when Zeigler arrived at the emergency room of the hospital.
Defendant presents two arguments to this Court in support of her three assignments of error. Two of the assignments concern defendant's conviction while the third challenges the sentence she received.
Defendant's first assignment of error alleges that she received ineffective assistance from her court appointed counsel.
Defendant first retained the services of two attorneys from Mississippi who later withdrew from representation because they were not licensed to practice in Louisiana. Upon application of defendant, the trial court determined that she was indigent (having spent her funds retaining the Mississippi attorneys) and appointed counsel to represent her. Shortly after trial defendant secured the services of the attorney who represents her on appeal. This new attorney filed a motion for a new trial. The motion urged as one of the grounds for a new trial ineffective assistance of counsel.
Defendant concedes that this Court normally holds that ineffective assistance of counsel is an issue more properly raised by writ of habeas corpus. State v. Brown, 384 So.2d 983 (La.1980); State v. Malveaux, 371 So.2d 820 (La.1979). As we explained in State v. Barnes, 365 So.2d 1282, 1285 (La. 1978), this allows the "district judge in a proper case to order a full evidentiary hearing on the matter." (citations omitted). In the case before us, the trial judge held a hearing on the motion for a new trial during the course of which the allegation of ineffective assistance of counsel was explored in detail. Since the record discloses evidence needed to decide the issue of ineffective assistance of counsel and that issue was raised by assignment of error on appeal, in the interest of judicial economy we will address the issue now.
Defendant contends that trial counsel failed to develop a justification defense even though she supplied him with the names of witnesses who would have testified to threats and violent acts committed by the victim against various people prior to the shooting at issue in the instant case. At the hearing on the motion for a new trial several of these witnesses testified to altercations they had had with the victim. Trial counsel also testified at this hearing, acknowledging that prior to trial he knew of some of the incidents related by the witnesses. Trial counsel explained that he did not introduce this evidence at trial because he had notice that the state intended to introduce evidence of prior crimes of the defendant. Counsel stated that he had discussed the situation with defendant and it was decided "not to open up that kettle of fish." According to counsel, the discussion with defendant disclosed that she had used a gun to threaten several people and that she had allegedly threatened the victim's mother.
La.R.S. 15:482 allows a defendant to introduce evidence of the victim's dangerous character or of his threats against the accused once there is evidence of a hostile demonstration or of an overt act on the part of the victim. Defendant testified in her own behalf and stated that Zeigler had bent over and she heard him cock his gun at the same time that her sister yelled to her that Zeigler had a gun. Defendant's sister, Dorothy Morrison, testified that she had seen Zeigler with a gun and "hollered" to warn her sister, and that defendant then *531 pulled the gun from her purse and shot Zeigler. Charlene Zeigler, daughter of defendant and wife of the victim, also testified as a witness for the defense, stating that her husband had bent over to pull out his gun and that she yelled to warn her mother. Thus, there was evidence of a hostile demonstration or overt act on the part of the victim which is the threshold requirement for admissibility of evidence of the victim's dangerous character or of his threats against the accused.
In State v. Lee, 331 So.2d 455, 461 (La.1975), this Court held that "prior threats and violent acts (whether against the accused or against others) ... are admissible if defendant knew of them at the time of the offense." Even assuming that defendant did know of the threats and acts of the victim at the time of the shooting, we are not prepared to say that the decision not to call the witnesses to relate these incidents demonstrates constitutionally deficient representation.
One of the witnesses at the hearing was a seven-year old boy who claimed that the victim had at an earlier time pointed a gun at his head and told him to walk into another room. Counsel could well have decided not to explore this purported incident based upon a concern that the testimony would not have been admissible because of the youth of the witness. In fact, upon examination by her new attorney, defendant admitted that trial counsel had informed her that the witness "wasn't old enough."
Another incident related at the hearing concerned a time when the victim was alleged to have forced off the road the car in which his wife and her father were riding. This event was followed by the defendant's threatening the life of the victim's mother. A witness testifying to the event on the road would have been open to cross-examination by the state on the entire transaction which would have reflected poorly upon the defendant. It is understandable that counsel chose not to expose this prior conduct of the defendant.
One of defendant's sisters was another witness counsel did not call at trial. This sister had driven defendant to Sheppard's garage where the "tussle" between defendant and the victim happened about which Zeigler was questioned at trial. This witness drove defendant to the garage knowing that defendant had a gun in her purse and that there was a great deal of animosity between defendant and Zeigler. Fuller exploration of the encounter at Sheppard's could well have left the jury with the impression that defendant went to the garage to instigate the trouble.
Trial treatment of the encounter at Sheppard's Garage did show that defendant and her son-in-law had been involved in what the victim himself termed a "tussle." Although examination developed that defendant pulled a gun and pointed it at Zeigler (and others who were present), it also showed that defendant did not fire the gun on that occasion. At the hearing on the motion for a new trial, trial counsel explained that he used this incident to develop the defense that his client was afraid of the victim and that she did not shoot the gun on the earlier occasion when she had had an opportunity to do so.
Considering that evidence of a prior altercation between defendant and the victim was put before the jury, and considering the possible ramifications of presenting evidence of other acts of the victim coincident with threatening behavior by the defendant, trial counsel's decision not to pursue these other acts ("open up that kettle of fish" in counsel's words) does not seem farfetched. Full exploration of these events might well have portrayed defendant as an individual who "toted" a gun and often threatened to use it. This judgment call on the part of trial counsel did not so surely prejudice defendant's chance of being found not guilty as to constitute a deprivation of defendant's Sixth Amendment right to effective counsel. Effective counsel has been defined to mean "not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance." United States v. Fruge, 495 F.2d 557, (5th Cir. 1974). Accord: United States v. Johnson, 615 F.2d 1125 (5th Cir. 1980).
*532 This assignment of error lacks merit.
Defendant's second assignment of error is that the trial court erred in denying her motion for a new trial on the basis of (a) newly discovered evidence, (b) admission of prejudicial hearsay and (c) erroneous admission of evidence of another crime.
The newly discovered evidence which defendant contends entitles her to a new trial is the testimony of witnesses regarding the prior violent acts and threats of the victim. La.C.Cr.P. art. 851 lists, among the grounds for a new trial, that "new and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty."
The evidence which defendant claims is newly found is evidence which she discussed with her attorney during the preparation for trial. It is clear that the evidence is not new evidence. Therefore defendant has not met the threshold requirement of Article 851 and there is no merit to this portion of the assignment of error.
Regarding defendant's complaint of the admission of hearsay, we note that there was no objection to the testimony which she claims was hearsay. Under La.C. Cr.P. art. 841, a contemporaneous objection is required to preserve an error for appellate review. The purpose of the contemporaneous objection rule is to allow the trial judge the opportunity to rule on the objection and thereby prevent or cure an error. State v. Herrod, 412 So.2d 564 (La.1982); State v. Hysell, 364 So.2d 1300 (La.1978). Without the allegation of ineffective assistance of counsel, we would dismiss this assignment of error for lack of a contemporaneous objection. However, because defendant has asserted that she did not receive effective assistance of counsel, we shall consider the assignment despite the lack of objection.
The testimony which defendant contends was prejudicial hearsay is the testimony of Mrs. Chenevert when the state called her on rebuttal. During its case in chief, the state questioned this witness about a conversation she had had with Mrs. Zeigler, defendant's daughter, a short time before the shooting. At that time, defense counsel objected to the line of questioning because it called for hearsay. The trial judge sustained the objection and Mrs. Chenevert did not relate the contents of the conversation.
During the presentation of the defense case, defendant's daughter, Mrs. Zeigler testified. On cross-examination, she denied telling Mrs. Chenevert that Danny Zeigler would not be around much longer because the trouble would be settled one way or the other that night.
On rebuttal, the state again called Mrs. Chenevert to testify and she related, without objection, that Mrs. Zeigler had told her that if trouble started while Zeigler was at the trailer "that it was going to be ended tonight one way or the other, that he wouldn't be around no longer to cause trouble."
Hearsay is testimony in court of a statement made out of court, the statement being offered as an assertion to show the truth of the matters asserted and thus resting for its value upon the credibility of the out-of-court asserter. State v. Edwards, 406 So.2d 1331 (La.1981); State v. Martin, 356 So.2d 1370 (La.1978). However, evidence is not hearsay if introduced to show that an utterance occurred or that a conversation has taken place rather than to show the truth of the matter. State v. Naas, 409 So.2d 535 (La.1981). Furthermore, once a witness has denied making a statement, evidence that the witness did make such a statement is admissible. La.R.S. 15:493.
Thus, the evidence which defendant terms prejudicial hearsay may well have been admissible to impeach Mrs. Zeigler's earlier testimony and thus not have been subject to objection. As noted earlier, defense counsel did object when Mrs. Chenevert was questioned about her conversation with Mrs. Zeigler before Mrs. Zeigler took the stand and denied making the statement. *533 Defense counsel did not object to Mrs. Chenevert's rebuttal testimony following Mrs. Zeigler's denial of the statement perhaps because the testimony may well have been admissible for impeachment of Mrs. Zeigler's testimony. Counsel's failure to object in this instance is no proof of constitutionally deficient assistance of counsel.
The trial judge properly denied a new trial based upon this allegation.
Defendant's other contention in her motion for a new trial was that the trial court had erred in allowing into evidence testimony concerning a previous encounter between her and the victim which was in the nature of a prior unrelated crime committed by the defendant.
During cross-examination of the victim, defense counsel asked whether he had ever kicked defendant with his boot. Zeigler answered that he and defendant had had a fight. Counsel then inquired whether Zeigler remembered the fight. At this point, the prosecutor said that he wished to put defense counsel on notice that he (defense counsel) was "opening doors for me to explore now." On re-direct, the prosecutor asked Zeigler for details of the fight. Zeigler responded that he and his wife were talking at Sheppard's Garage and his wife slapped him. When he slapped his wife back, defendant grabbed him by the hair and they started "tussling." Zeigler said that his brother stopped the fight and the women got into their car to leave. After entering the car, defendant "grabbed a pistol... and pointed it at us."
Re-direct examination must be confined to the subject matter of the cross-examination and to the explanation of statements elicited on cross-examination. La.R.S. 15:281. Defense counsel elicited reference to this earlier encounter between defendant and Zeigler during cross-examination and it was the prerogative of the prosecutor to explore the matter further. As required by the above statute, defense counsel had the opportunity to re-cross examine the witness on the details of the fight which were brought out on re-direct. The re-cross examination developed that defendant did not shoot the gun on this occasion and defense counsel stressed this point in his closing argument to the jury.
Because the re-direct examination did not exceed the scope of the cross-examination and because defendant "opened the door" for the challenged line of questioning, the judge did not err in denying a new trial based upon this contention. Additionally, there was no contemporaneous objection to preserve this issue for review. La.C.Cr.P. art. 841.
For the foregoing reasons, there is no merit to defendant's assignment of error addressed to the denial of a new trial.
Defendant's final assignment of error challenges the twenty-five year sentence imposed by the trial judge. Defendant contends that the length of the sentence is excessive and that the trial judge failed to state for the record adequate reasons as mandated by La.C.Cr.P. art. 894.1.[2]
In imposing sentence, the trial judge noted that the pre-sentence investigation report showed that defendant had no prior felony offenses. The judge stressed the seriousness of the instant offense: that the victim had been shot twice at close range with a .357 magnum revolver and suffered permanent brain damage with attendant impaired vision, partial loss of use of his left hand and arm and impaired speech. The judge also observed that the victim incurred several thousand dollars in hospital bills, and that other expenses had accumulated as a result of his injuries and continuing disabilities. Based upon these observations, the judge concluded that any lesser sentence would deprecate the seriousness of the crime.
Although the sentence imposed falls within the statutory limits, this Court may review it to determine whether it is excessive under the circumstances of the *534 crime and the particular defendant. State v. Sepulvado, 367 So.2d 762 (La.1979). In general, a sentence is excessive if it is grossly out of proportion to the severity of the crime or if it is nothing more than the purposeless and needless imposition of pain and suffering. State v. Kersey, 406 So.2d 555 (La.1981); State v. Bonanno, 384 So.2d 355 (La.1980); State v. Goode, 380 So.2d 1361 (La.1980).
While the trial judge did not articulate every aggravating and mitigating circumstances listed in Article 894.1, he did articulate sufficient reasons for the sentence imposed. Considering the seriousness of the crime and the manner in which it was committed, we do not believe that a twenty-five year sentence is disproportionate to defendant's conduct nor a clear abuse of the trial judge's broad discretion in imposing sentence. State v. Kersey, supra; State v. Spencer, 374 So.2d 1195 (La.1979).
This assignment lacks merit.

Decree
For the foregoing reasons the conviction and sentence of defendant Betty Jean Ratcliff are affirmed.
AFFIRMED.
NOTES
[*] Judges William Norris, III and Fred C. Sexton, Jr. of the Court of Appeal, Second Circuit, and Judge Robert L. Lobrano of the Court of Appeal, Fourth Circuit, participated in this decision as associate justices ad hoc, joined by Associate Justices Pascal F. Calogero, Jr., James L. Dennis, Jack Crozier Watson, and Harry T. Lemmon.
[1] At the scene sheriff's deputies found a .25 calibre automatic pistol, cocked but with the safety in position. The gun contained six rounds of live ammunition. Zeigler identified this pistol as his own.
[2] Article 894.1 lists considerations to be taken into account by the trial judge in imposing sentence and directs that the judge "state for the record the considerations taken into account and the factual basis therefor in imposing sentence."