470 So.2d 434 (1985)
STATE of Louisiana
v.
Wilbert GREEN.
No. CR84-1124.
Court of Appeal of Louisiana, Third Circuit.
May 15, 1985.
*435 Wilbert Green, pro se.
Elaine Deloach, Alexandria, for defendant-appellant.
G. Earl Humphries, III, Asst. Dist. Atty., Alexandria, for plaintiff-appellee.
Before GUIDRY, FORET and KNOLL, JJ.
GUIDRY, Judge.
Defendant, Wilbert Green, was charged by grand jury indictment with the crime of manslaughter, in violation of La.R.S. 14:31. Defendant was tried before a twelve person jury and was found guilty as charged by a vote of 11 to 1. The trial judge sentenced defendant to a term of fifteen years at hard labor. Defendant appeals.

FACTS
On July 1, 1982, at approximately 9:30 p.m., Wilbert Green killed Samuel Kemper by stabbing him with a knife. Although the circumstances surrounding the incident are somewhat in dispute, they can be summarized as follows:
The stabbing occurred at Cheaton Park in Alexandria, Louisiana. Samuel Kemper and Wilbert Green were both observing a softball game taking place at the park. At some point during the game, Kemper became embroiled in an argument with his paramour, Eva Huel. Kemper, who had been drinking heavily, entered his vehicle and proceeded to drive off. As Kemper drove off, his vehicle struck Green's car. Green was seated on the hood of his vehicle observing the game at this time. Kemper attempted to leave the scene after striking Green's car. Green either fell off or jumped off his vehicle as it was struck by *436 Kemper. In any event, Green entered the passenger compartment of his vehicle in order to retrieve a knife and proceeded to chase Kemper.
Kemper could not control his vehicle as he attempted to leave the park. A number of individuals seated on their vehicles behind the right field fence noticed that Kemper was proceeding in their direction. Fearing that Kemper's vehicle would strike them, Joseph Raines, armed with a pistol, fired two shots in the air in an effort to avert Kemper. Raines' efforts were successful as Kemper's vehicle changed directions. However, soon after, Kemper's vehicle struck a fence and came to a halt.
All this occurred in a short span of time with Green, armed with a knife, continuing in pursuit of Kemper. After Kemper's car crashed into the fence, Kemper alighted from his vehicle and ran into some bushes. Green either followed or was already in the bushes. Shortly thereafter, Green came out of the bushes. Green had stabbed Kemper twice. The fatal wound was to the heart. Kemper was unarmed.
Defendant appeals his conviction on the basis of the following assignments of error:
1. The State did not present sufficient evidence to rebut defendant's claim of self-defense.
2. Defendant was provided ineffective counsel in contravention of the Sixth and Fourteenth Amendments of the United States Constitution.
Other assignments of error were perfected in the trial court, however, they were not briefed on appeal and are therefore considered abandoned. State v. Freeman, 447 So.2d 1145 (La.App. 3rd Cir. 1984), writ denied, 449 So.2d 1356 (La.1984).

ASSIGNMENT OF ERROR NO. 1
Defendant asserts that the State failed to prove beyond a reasonable doubt that the homicide of Samuel Kemper was not perpetrated in self-defense. Defendant freely admitted killing the victim by stabbing him but contended that it was done in self-defense.
The defendant in a homicide prosecution who asserts that he acted in self-defense does not have the burden of proof on that issue. The State has the entire and affirmative burden of proving beyond a reasonable doubt that the homicide was not perpetrated in self-defense. State v. Savoy, 418 So.2d 547 (La.1982).
In State v. Sylvester, 438 So.2d 1277 (La.App. 3rd Cir. 1983), writ denied, 444 So.2d 606 (La.1984), this court observed that:
"In order to afford a criminal defendant due process, the relevant inquiry on appeal is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact would have found beyond a reasonable doubt that the homicide was not committed in self-defense ..." (citations omitted).
Under La.R.S. 14:20 a homicide is justifiable:
"(1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger; ..."
As aforestated, Green pursued Kemper with a knife after Kemper struck his car. Kemper, who was extremely intoxicated at that time, .31% blood-alcohol level, attempted to drive his vehicle out of the ballpark but was unsuccessful. Defendant continued to pursue Kemper as Kemper drove around the park. According to the State's witnesses, Kemper attempted to flee on foot after his vehicle crashed into a fence. Kemper ran into some bushes located approximately 150 feet from where his vehicle came to rest; Green followed. Shortly thereafter, Green reappeared from the bushes. As one witness put it, Green stated to the crowd: "Ya'll can go get the son of a bitch, he (sic) dead." Green allegedly made this statement while wiping the blood off of his knife.
*437 Green denied making any such statement. Moreover, Green testified that he armed himself with a knife simply to stop Kemper from harming him. Green added that as he chased Kemper he heard gunshots. He believed that these shots were fired at him by Kemper. Since he knew Kemper to be a violent man, which was corroborated by other witnesses, Green testified that he feared for his safety and thus ran into the bushes to hide from Kemper. Green alleges that he heard some rustling in the bushes so he began to move away but, within a matter of seconds, he bumped into Kemper. Green testified that he feared for his life so he closed his eyes and began swinging his knife.
Clearly, the jury's determination as to defendant's claim of self-defense depended, at least in part, on its assessment of the credibility of the witnesses. The testimony of the witnesses presented by the State established that defendant chased an unarmed, extremely intoxicated individual into some bushes and moments later returned and nonchalantly told the crowd that Kemper was dead, while cleaning the blood off of his weapon. Defendant's account of what took place differed. Although Green admitted pursuing Kemper with a knife, he stated that it was only to prevent Kemper from harming him. According to defendant, his chase of Kemper halted when he heard the gunshots. Defendant testified that he believed that the shots were being fired at him by Kemper so he hid in the bushes.
Admittedly, shots were fired while defendant was pursuing Kemper. They were fired by Joseph Raines into the air to scare off Kemper. Kemper was in his vehicle at this time. Even if we accept defendant's testimony that he feared Kemper was shooting at him, we are not satisfied that defendant could claim self-defense. See La.R.S. 14:21. Be that as it may, the witnesses presented by the State established that defendant chased Kemper into the bushes as Kemper attempted to run away. The actions of defendant do not appear to be that of a man who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm. Hence, viewing the evidence in a light most favorable to the prosecution, we conclude that a rational trier of fact could have found beyond a reasonable doubt that this homicide was not committed in self-defense.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 2
Defendant claims that he was denied effective assistance of counsel at trial. While this issue is normally relegated to post conviction relief applications, we will consider it on appeal. State v. Burkhalter, 428 So.2d 449 (La.1983).
In State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983), the Louisiana Supreme Court made the following comments concerning a defendant's claim of ineffective counsel:
"To establish a claim of ineffective representation, the defendant must demonstrate that counsel did not meet the level of competency `normally demanded' in criminal cases. An adequate defense must be based on `informed professional deliberation.' McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); State v. Felde, 422 So.2d 370 (La.1982). Effective assistance of counsel does not mean `errorless' counsel, or counsel which may be judged ineffective on mere hindsight, but counsel `reasonably likely to render and [actually] rendering reasonably effective assistance.' State v. Seiss, 428 So.2d 444 (La.1983); State v. Ratcliff, 416 So.2d 528 (La.1982).
In the recent decision of State v. Berry, 430 So.2d 1005 (La.1983), this court established a meaningful analysis for claims of ineffective assistance of counsel. Adopting the two-pronged inquiry of McQueen v. Swenson, 498 F.2d 207 (8th Cir. 1974), this court established the first inquiry as to whether counsel violated some duty to the client. The second inquiry is whether the violation, if any, prejudiced the client in the defense of his case...."
*438 In the instant case, defendant cites several instances where he claims his trial counsel should have moved for a mistrial and his failure to do so amounted to ineffective assistance of counsel.
At the commencement of trial, all witnesses were placed under the rule of sequestration. During cross examination of State witnesses, it was brought out that the day before trial all of the State witnesses had met with the Assistant District Attorney. Defendant notes that Milton Pittman and Shirley Jenkins, in their testimony, both described the dent in defendant's car as one that could be repaired with a "rubber hammer." Also, Eva Huel, Monica Davenport and Pittman all testified that the victim's car had faulty brakes and that the victim did not own a gun. Because of the similarity of this testimony, defendant asserts that the pre-trial meeting of the State's witnesses with the Assistant District Attorney resulted in his being denied a fair trial. Defendant asserts that defense counsel's failure to move for a mistrial or a new trial in light of this pre-trial meeting amounts to ineffective counsel.
Counsel for defendant argues in brief that while there may not be a direct prohibition in the law of a District Attorney meeting with witnesses prior to trial and discussing the case with them, it certainly is indirectly prohibited by the rule of sequestration.
La.C.Cr.P. Art. 764 sets forth the rule of sequestration as follows:
"Upon its own motion the court may, and upon request of the state or the defendant the court shall, order that the witnesses be excluded from the courtroom or from where they can see or hear the proceedings and refrain from discussing the facts of the case or the testimony of any witnesses with anyone other than the district attorney or defense counsel. The court may modify its order in the interest of justice."
The purpose of the rule of sequestration is to prevent witnesses from being influenced by prior testimony and to strengthen the role of cross examination in developing the facts. State v. Johnson, 438 So.2d 1091 (La.1983).
We do not find any provision in our Code of Criminal Procedure which would prohibit a District Attorney from meeting with prospective witnesses prior to trial and discussing their testimony with them, nor do we believe that this amounts to an indirect violation of the rule of sequestration. Hence, trial counsel for defendant was not ineffective in failing to move for a mistrial. Furthermore, trial counsel made the jury fully aware of this pre-trial meeting during cross examination of the State's witnesses.
Defendant further argues that his trial counsel was ineffective for failing to request an admonition or moving for a mistrial after the Assistant District Attorney made prejudicial remarks in his closing and rebuttal arguments.
The alleged prejudicial remark made by the prosecutor in closing argument was that defendant saw Kemper run by and chased him into a corner where he could not get out. The alleged prejudicial remark which took place during rebuttal argument by the prosecution was as follows:
"There's one thing that I have some concern about and that was the other wounds on Samuel Kemper. This is the way in which Samuel Kemper was found that night. Remember we asked Dr. McCormick to circle those other superficial wounds and that he did that. What caused those wounds? Was it scratch marks? Evevi (sic) Huel said not, they did not have a physical fight. Was it barbwire? Was defendant pursuing Samuel Kemper into this corner into a place where he could not go any other direction except over the top of the fence and that's where he was trying to go. How many of you know what the barbs on barbwire look like? Has a slight point, flat ended. The middle circle. The triangular hole. Does it look like a fingernail? I suggest to you that it is not.

*439 Dr. McCormick testified that the wound to the heart that killed him was straight in directly this way. If someone is running at you and you collide with them and you stab them, is it going to be directly straight in or like this? But if you come up from behind them when they're climbing the fence and you pull them down and you reach around behind them, it would be straight in or if you pulled them on the ground and you reach right on top of them it's straight in."
The scope of permissible argument in a criminal case is governed by La.C.Cr.P. Art. 774, which provides:
"The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
The argument shall not appeal to prejudice.
The state's rebuttal shall be confined to answering the argument of the defendant."
In light of the above provision, the remarks made by the prosecutor were permissible. The prosecutor's comment that Green chased Kemper into a corner was a conclusion of fact which could be drawn from the evidence presented by the State. Also, the remark made in rebuttal argument by the prosecutor regarding the wounds received by the victim was based upon testimony by the pathologist, Dr. McCormick.
Inasmuch as the prosecutor's remarks were permissible under La.C.Cr.P. Art. 774, defense counsel was not ineffective in failing to object or moving for a mistrial.
As the record clearly reveals, trial counsel for defendant did not violate any duty owed to defendant. Hence, this assignment of error is without merit.
For the above and foregoing reasons, defendant's conviction and sentence are affirmed.
AFFIRMED.
FORET, J., concurs and will assign reasons.
FORET, Judge, concurring.
I concur in the result reached by the majority, but file this concurring opinion because I disagree with one aspect of the majority opinion.
On assignment of error # 1, the majority finds that there is ample evidence in the record to sustain the jury's finding that the defendant did not kill the victim in self-defense, and I agree.
As to the assignment of error of ineffective counsel, the majority undertakes to discuss and rule on this issue. I think that we should not consider the issue of ineffective counsel on appeal, but rather relegate that issue to a post-conviction relief application in the district court, in the event of a final affirmation of his conviction by the Louisiana Supreme Court. State v. Prestridge, 399 So.2d 564 (La.1981); State v. Brown, 384 So.2d 983 (La.1980); State v. Deloch, 380 So.2d 67 (La.1980).
The majority decides on the basis of State v. Burkhalter, 428 So.2d 449 (La. 1983), to consider this assignment in this appeal. However, I don't think that Burkhalter envisioned this kind of situation. First of all, Burkhalter was a Louisiana Supreme Court case, which affirmed the defendant's conviction and therefore finally put to rest the issue of ineffective counsel. The language used in Burkhalter is that:
"In this case the absurdity of the argument prompts our determination now that the assignment is non-meritorious".
The court then went on to note that defendant was on trial for first degree murder for having killed a police officer in the line of duty and that he was convicted only of second degree murder. The court went on to say that defendant's lawyer succeeded in saving defendant from execution, no doubt in small measure because of tactical decisions in trying the case like the arguments to which defendant took exception. The defense counsel had argued in closing argument that at most, his client was guilty of second degree murder and further, that the jury's focusing deliberation *440 would not likely be upon whether defendant fired the shots, but on whether defendant specifically intended and knowingly and wilfully killed a police officer in the line of duty with knowledge that he was a police officer. I agree with the Supreme Court in Burkhalter that these contentions were absurd. But the bottom line here is that the Supreme Court was the final arbiter of this assignment of error by the defendant; a situation in which we are not, inasmuch as the Supreme Court can still grant writs on the other assignment of error and reverse the conviction, in which event the issue of ineffectiveness of counsel would never be reached.
The only two cases which I found which mentioned Burkhalter are both 1984 Second Circuit cases, State v. Wisenor, 452 So.2d 281, and State v. Colvin, 452 So.2d 1214. In Wisenor, the Second Circuit cited Burkhalter for the proposition that the issues of incompetent or ineffective counsel are issues which are properly raised in an application for post-conviction relief, and did not consider the issue. The Colvin court reviewed the jurisprudence on this point, including the Supreme Court case of State v. Ratcliff, 416 So.2d 528 (La.1982), where the Supreme Court first announced an exception to the rule that no claim of ineffective assistance of counsel would be entertained on direct appeal. However, in Ratcliff, the trial court had held a hearing on a motion for a new trial containing an allegation of ineffective counsel and, because the claim was explored in detail by the trial court and the record disclosed the evidence needed to decide the issue, the Supreme Court addressed the question in the interest of judicial economy. Judge Hall, in Colvin, states that Ratcliff was followed in Burkhalter by the Supreme Court. I note, however, that Burkhalter makes no mention whatsoever of Ratcliff.
In Colvin, Judge Hall goes on to discuss two court of appeal decisions, State v. Buckenburger, 428 So.2d 966 (La.App. 1 Cir. 1983), and State v. Willis, 438 So.2d 605 (La.App. 3 Cir. 1983). In Buckenburger, the First Circuit, in a footnote, acknowledged Ratcliff, but distinguished it on the basis that the record in Ratcliff was sufficient for deciding the issue, but the present record reflected that the issue was not explored in detail below. In Willis, this Circuit held that in the absence of a record sufficiently addressing the claim of ineffective counsel, an assignment of error based on such a claim presented nothing for review.
So where are we? The only two decisions which create exceptions to the general rule of post-conviction procedure in such cases are the two Supreme Court decisions. Burkhalter decided the matter on the "absurdity" of the assignment. Ratcliff heard the issue on appeal because of the fact that the trial court had previously held a hearing on an allegation of ineffective counsel, and had explored the allegations in detail. Because the record disclosed all the evidence needed to decide the issue, the Supreme Court addressed the question in the interest of judicial economy.
Obviously, the present case is clearly distinguishable from the Ratcliff decision, and while it may come close to meeting the "absurdity" rule of the Burkhalter decision, I am not prepared, based on the latter decision, to establish the precedent that we will consider the plea of ineffective counsel on appeal, even though the issue has not been heard and passed upon in the trial court under post-conviction relief procedures. I further note that our affirmation of a conviction is not final until the Supreme Court affirms it, either by judgment or denial of a writ. This makes our position entirely different from that of the Supreme Court in Burkhalter.