CRICHTON, J.,
additionally concurs and assigns reasons.
hi concur in the reasons set forth in the per curiam and emphasize in addition that Lee has shown no entitlement to post-conviction relief as a result of trial counsel’s alleged failings at the capital penalty phase of the proceedings.
The brutal and vicious manner in which Lee killed Pace cannot be "ignored. Pace bled to death as á result of the'81 knife and screwdriver wounds that Lee inflicted. State v. Lee, 05-2098, pp. 2-4 (La.1/16/08), 976 So.2d 109, 116-17. He slashed her throat - and used a clothing iron, which investigators found blood-stained and broken into pieces, to bludgeon her head, fracture her skull, and crush her eyeballs. Id. p. 3 n. 4, 976 So.2d at 116. Her heart, fiver, and lungs were each perforated three times and a stab wound to her eye was so forceful that it penetrated the cranial cavity. Id. Pace also sustained several defensive wounds as she attempted to ward off the terrorizing attack. Id. In addition to the grisly details of Pace’s murder, the jury also heard evidence that Lee perpetrated at least four similarly heinous attacks on other women.
Against this overwhelming and horrific evidence, Lee now complains about his appointed lawyer’s performance during the penalty phase, contending that counsel unreasonably failed to discover and present additional mitigating evidence. | Specifically, he points to omitted evidence of his frontal lobe abnormalities; bipolar disorder;. depression; schizophrenia; mood disturbances; split personality disorder; family history of mental illness; and of the physical abuse he suffered at the hands of his stepfather when he attempted to intervene to prevent his stepsister from being molested. In Lee’s view, this omit *640 ted evidence would have swayed at least one juror against the death penalty.
Complaints about counsel’s performance at the penalty phase of a capital trial, like other allegations of counsel’s ineffectiveness, are governed by the well-established Strickland test, according" to which counsel’s decisions are afforded a heavy measure of deference. Strickland v. Washington, 466 U.S. 668, 689-90, 104 S.Ct. 2052, 2065-66, 80 L.Ed.2d 674 (1984). The right to the effective assistance of'counsel does not guarantee errorless counsel-but rather, counsel likely to render effective assistance. See U.S. Const. amend. VI; La. Const. art. I, § 13; State v, Ratcliff, 416 So.2d 528, 531 (La.1982). Counsel ⅛ not necessarily required to mine a defendant’s entire life history in search of mitigating evidence; and decisions regarding the presentation of mitigating evidence should generally be viewed as strategic and not later second-guessed.’ See State v. Felde, 422 So.2d 370, 393 (La.1982) (that a particular strategy fails does not establish ineffective assistance); cf. Sanders v. State, 738 S.W.2d 856, 858 (Mo.1987) (“The selection of witnesses and the introduction of evidence are questions of trial strategy and the mere choice of trial strategy is not a foundation for finding ineffective assistance of counsel.”).
■Even in cases in which a capital post-conviction petitioner has shown that counsel’s penalty phase performance was somehow deficient, no relief is due unless he has also shown a reasonable probability that, absent counsel’s faffing, the jury would have concluded that the balance of all aggravating and mitigating Isrircumstances did not warrant the death penalty. Strickland, 466 U.S. at 695, 104 S.Ct. at 2068-69. In other words, no relief •is due-even if counsel’s presentation of mitigating evidence was not as thorough as it could have been-unless the omitted evidence would have been likely to change the sentencing verdict. See State v. Hamilton, 92-2639, pp. 6-10 (La.7/1/97), 699 So.2d 29, 32-34 (affirming conviction but vacating death sentence in light of finding that “[djefense counsel did nothing in the penalty phase except offer the meager testimony he pi’esented at the guilt phase and give a lackluster two paragraph closing argument.”); State v. Sanders, 93-0001, p. 25 (La.11/30/94), 648 So.2d 1272, 1291, cert. denied, 517 U.S. 1246, 116 S,Ct. 2504, 135 L.Ed.2d 194 (1996).
In the instant case, defense counsel presented substantial evidence at the penalty phase in an effort to demonstrate Lee’s intellectual disability and show why he should be spared the death penalty, Counsel presented expert testimony indicating that Lee’s results on the Wechsler Adult Intelligence Scale (WAIS-III) and the Vineland Adaptive Behavior Scale were consistent with a diagnosis of mild mental retardation; testimony from a board-certified neuropsychologist who opined that Lee was mildly mentally retarded, demonstrated communication deficits and lacked capacity for self-direction; evidence that Lee was enrolled in special education and speech therapy as a child; and testimony from a board-certified forensic psychiatrist who explained that she had interviewed Lee (like all criminals) with a skeptical eye and opined with reasonable medical certainty that he was mildly mentally retarded, in light of his inability to remember chronology of past events, frequent self-repetition, and inability to grasp abstract concepts. Lee, 05-2098, pp. 53-54, 976 So.2d at 144-45. In addition, counsel elicited testimony from two school administrators and two teachers who encountered Lee during their careers and who recalled that he had been an average or below average |4student. Counsel also presented Lee’s younger sister, who, after expressing apologies for the *641 victims’ families, recounted her memories of growing up with Lee and explained that although they sometimes argued, she loved him and they had always reconciled. She also acknowledged an incident when they were in their late teens which prompted her to file a complaint against Lee: while at the home she shared with their mother, she heard a knock on the locked door and looked outside to see that it was Lee. When she refused to let him in, for reasons unstated,' Lee removed the glass panel from the door, reached in, and unlocked it. Upon entering, he threatened physical violence and announced that he would come and go as he pleased and no one could do anything to stop him.
In urging entitlement to post-conviction relief, Lee. bemoans counsel’s failure to discover and present evidence of his frontal lobe abnormalities and various alleged mental health problems, including bipolar disorder and schizophrenia; his family’s history of mental illness; and the physical, abuse he suffered and observed as a child. Even assuming, however, that counsel’s presentation of mitigating 'evidence was unreasonably limited, see Hamilton, 92-2639, p. 6, 699 So.2d at 32, and possibly' less than beneficial to his defense — to the extent it created an impression he was an average or below average student who generally got along with others, and who, as a young adult, began to exhibit a propensity for violence — Lee has not made the required showing that he suffered prejudice as a result.
In’ my view, nothing Lee has offered post-conviction would have outweighed the atrocious nature of his crimes. See, e.g., Bobby v. Van Hook, 558 U.S, 4, 12-13, 130 S.Ct. 13, 20, 175 L.Ed.2d 255 (2009) (weighing aggravating ' circumstance that defendant stole victim’s goods, killed him, and then disfigured his body, in concluding that omitted mitigating evidence would not have affected sentencing verdict); see also Strickland, 466 U.S. at 700, 104 S.Ct. at 2071 (“.Given the overwhelming aggravating factors,.there is no reasonable probability that the omitted evidence would have changed the conclusion that the aggravating circumstances outweighed the mitigating circumstances and, hence, the sentence imposed.”); State v.Code, 627 So.2d 1373 (La.1993) (affirming convictions and death sentences for serial' killer who committed eight heiiious killings) and Code v. Cain, 09-0113 (La.10/8/10), 46 So.3d 1258 (denying writs following district court’s dismissal of application for post-conviction relief in which defendant claimed, inter alia, that counsel rendered ineffective assistance by failing' to discover and present additional mitigating evidence). Even if all the omitted evidence had been presented, there would not have existed a reasonable probability of á different sentence in a case with such horrendous crimes and in which 'substantial evidence of Lee’s adaptive impairments was presented in furtherance of his mental retardation claim. Not every case in which counsel fails to present mitigating evidence requires setting aside the sentence. See Woodford v. Visciotti, 537 U.S. 19, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (reinstating judgment of California Supreme Court that it was not probable a jury would find evidence that defendant’s childhood was troubled or that he had turned to drugs to escape an unbearable family life would outweigh that he committed a cold-blooded execution style murder of one victim and tried to kill another during planned armed robbery, stabbed one man in an unrelated incident, and stabbed a -pregnant woman trying to protect her unborn child); see also Schriro v. Landrigan, 550 U.S. 465, 480-81, 127 S.Ct. 1933, 1943-44, 167 L.Ed.2d 836 (2007) (evidence that defendant was exposed to alcohol and drugs in útero, was abandoned by birth mother and *642 raised by alcoholic stepmother, and suffered poly-substance abuse at an earlier age, was so “weak” that district court did not err in denying an evidentiary hearing, given | (¡evidence that by age 30 he had murdered one man, repeatedly stabbed another, escaped from prison, and then killed another).
Given the compelling evidence that Lee committed five brutal murders marked by exceptional violence and unsuccessfully attempted another, he cannot show that counsel’s failure to present additional evidence that he may suffer from other mental disorders, whether or not related to his troubled upbringing, deprived him of a fair sentencing hearing or resulted in an unreliable recommendation of death. Rather, it appears likely that much of his “new” evidence would have been construed by jurors as cumulative of that presented in counsel’s effort to demonstrate his intellectual disability. Cullen v. Pinholster, 563 U.S. 170, 199-200, 131 S.Ct. 1388, 1409-10, 179 L.Ed.2d 557 (2011).
Lee also ignores the reality that,‘had counsel called additional experts to demonstrate his alleged mental illness or disorders, he would have further opened the door to rebuttal by state experts. See id. (citing Wong v. Belmontes, 558 U.S. 15, 24-25, 130 S.Ct. 383, 388-90, 175 L.Ed.2d 328 (2009) (per curiam) (taking into account that certain mitigating evidence would have exposed petitioner to further aggravating evidence)). Moreover, the allegedly wrongfully omitted evidence cannot be definitively characterized as entirely mitigating, given that jurors may have responded by finding Lee “simply beyond rehabilitation.” See Pinholster, 563 U.S. at 201, 131 S.Ct. at 1410 (citing Atkins v. Virginia, 536 U.S. 304, 321, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002) (recognizing that mitigating evidence can be a “two-edged sword” indicating dangerousness)).
A balanced review of the aggravating and mitigating circumstances in this case, including those omitted, reveals that jurors would likely reach the same sentencing determination at a second hearing. See Pinholster, 563 U.S. at 198, 131 S.Ct. ,at 1408 (in assessing prejudice, reviewing court “reweigh[s] the evidence in ^aggravation against the totality of available mitigating evidence.”) (citing Wiggins v. Smith, 539 U.S. 510, 534, 123 S.Ct. 2527, 2542, 156 L.Ed.2d 471 (2003)). Lee has not shown any entitlement to relief and the district court did not err when it dismissed this claim without an evidentiary hearing. La.C.Cr.P. art. 929(A).
As made clear in. the Court’s unanimous per curiam opinion, Lee has been afforded the assistance of appointed counsel and several years of access to Louisiana's courts for litigation of his post-conviction claims. Much like an inmate’s singular opportunity to seek relief in federal habeas proceedings, see 28 U.S.C. § 2244, after the delays for rehearing have run pursuant to La. Supreme Court Rule IX, this writ denial marks the end of Lee’s state court proceedings,[1] finally bringing some meas *643 ure of closure to the families of the multiple victims that have been irreparably affected by his hideous crimes.

. With the end of state collateral review here, the statute of limitations governing the federal writ of habeas corpus will cease to be . tolled and, if rehearing is not sought or granted in accordance with La.S.Ct. Rule IX, the time to apply to the federal courts for habeas review resumes. See 28 U.S.C. § 2244(d)(2). Whether the one-year period of limitations of 28 U.S.C. § 2244(d)(1) or the six-month period of 28 U.S.C.A. § 2263(a) will be applied by the federal courts presents what may be a res nova issue. See 28 U.S.C. § 2261; cf. Mata v. Johnson, 99 F.3d 1261, 1266 (5th Cir.1996), vacated in part on other grounds, 105 F.3d 209 (5th Cir.1997), Regardless, Lee should be aware that, unless he can show one of the narrow circumstances provided in La.C.Cr.P. art. 930.4 applies, he has no further right to state review.