Judgment rendered October 1, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,447-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

DEVIN R. NED                                Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 384,942

Honorable Donald E. Hathaway, Jr., Judge

* * * * *

LOUISIANA APPELLATE PROJECT            Counsel for Appellant
By: Christopher Albert Aberle

JAMES E. STEWART, SR.                  Counsel for Appellee
District Attorney

JASON W. WALTMAN
MARGARET E. RICHIE GASKINS
Assistant District Attorneys

* * * * *

Before STONE, STEPHENS, and ELLENDER, JJ.

**ELLENDER, J.**

Devin Ned appeals his sentences of 15 years at hard labor for attempted manslaughter and 5 years at hard labor for aggravated flight from an officer, consecutive, arising from an incident in which he drove away from officers investigating a violation of a protective order, led officers on a high-speed chase through Shreveport, ran off the road into a fence, and, when surrounded by police, backed up and struck an officer with his car. He also argues he received ineffective assistance of counsel. We affirm the convictions but vacate the sentences and remand for compliance with La. C. Cr. P. art. 883.

## FACTUAL BACKGROUND

Around 2:30 am on August 26, 2021, the Shreveport Police Department ("SPD") received a call from a woman who lived on the corner of Frederick Street and Kentucky Avenue, in the Queensborough area of Shreveport. She reported that the defendant, Ned, was not supposed to be there (according to discovery documents, a protective order had been in effect for about a year), but he was pacing around her yard, lurking. SPD Patrol Officer Sheila Taylor, who was nearby, drove up within minutes and saw the caller gesturing at Ned and screaming, "Here he is." As soon as Ofc. Taylor activated her overhead lights, however, Ned hustled into a white 2014 Nissan Altima and backed out the driveway; he pulled onto Frederick St. and sped east, forcing Ofc. Taylor to veer off the pavement. She radioed for assistance.

SPD Officer Anthony Visciotti, who was also nearby, approached the house, spotting Ofc. Taylor's police unit off the pavement and the Altima speeding away. Sensing the driver was trying to flee, Ofc. Visciotti gave

chase after activating his overhead lights and siren. The driver of the Altima led Ofc. Visciotti, followed by Ofc. Taylor, on a high-speed chase east on Frederick St. The Altima ran a stop sign to make a left onto Missouri Ave. and then sped north for several blocks through an area described as residential, with buildings close to the road and a posted speed limit of 25 mph; Ofc. Visciotti testified he was doing 65 mph but still unable to pace the Altima. Two more officers, in marked police vehicles, joined the pursuit.

After it crosses Lakeshore Dr., Missouri Ave. becomes a dead end. When Ned reached the end of the road, he took a right turn, going off the road and into a shallow, grassy ditch. Sensing that Ned would again try to make a run for it, Ofc. Visciotti got out of his unit, drew his weapon, and ordered Ned to exit his car. Instead of complying, Ned threw the Altima into reverse and started backing it straight at Ofc. Visciotti. The officer tried to evade it, but the Altima took a sharp turn and struck him, hurling him over the top of the Altima. (The impact was captured on the dashcam of one of the officers, Ofc. McKean, and played for the jury; another, Ofc. Page, testified he saw Ofc. Visciotti's body being hurled through the air.) Ofc. Visciotti was fortunately not badly injured: he landed on his feet, hopped up, grabbed his gun, and fired three shots into the Altima, striking Ned in the shoulder. Only then was Ned taken into custody.

Because the incident was an officer-involved shooting, La. State Police were called to investigate. Trooper Farquhar testified that when he secured the Altima, he found a Taurus 9 mm semiautomatic pistol under the driver's seat. Trooper Monroe testified the Altima left curving tracks in the grass; had the driver been attempting merely to get away, he could have backed straight up, but the sinuous tracks suggested the driver was

2

"following" Ofc. Visciotti and trying to strike him. Charles Freeman, a resident who lived near the dead end, testified that after he heard all the commotion, he found his fence was damaged, apparently by the Altima; repairs cost him about $100.

Ofc. Visciotti testified that in spite of the impact with the car, being tossed through the air, and landing on the ground, he sustained no broken bones. He was placed on 5½ months' "departmental leave," returning to duty in March 2022.

The state charged Ned by bill of information with (1) attempted first degree murder of a police officer and (2) aggravated flight from a law enforcement officer. The Public Defender Office was appointed to represent him; Ned also filed a number of pro se motions. The matter came to a three-day jury trial in September 2024. The jury convicted him of (1) the responsive verdict of attempted manslaughter and (2) aggravated flight from an officer.

## ACTION OF THE DISTRICT COURT

The district court did not order a presentence investigation report. At a sentencing hearing on October 1, 2024, the court noted Ned's date of birth (November 25, 1999), level of education (12th grade, Booker T. Washington High School), and recent employment (two weeks' work at Orlandeaux's Café at the time of his arrest). The court then said all the incarceration factors of La. C. Cr. P. art. 894.1 (A) applied, along with several of the aggravating factors of Art. 894.1 (B): Ned knowingly created a risk of death or great bodily harm; used threats of or actual violence; used a dangerous weapon, the automobile; used physical violence; had two prior arrests for

3

battery of a dating partner; and had two violations of a protective order. The court found no mitigating factors.

The court sentenced Ned to (1) 15 years at hard labor for the attempted manslaughter and (2) 5 years at hard labor for the aggravated flight from an officer, consecutive. The court waived all fines and penalties.

Appointed counsel filed motions for post verdict judgment of acquittal and for new trial on October 1, 2024; the court denied these peremptorily. Counsel filed a motion to reconsider sentence on December 20, 2024; there is no transcript or minute entry, but this motion was marked "DENIED" on December 23. This appeal followed.

## DISCUSSION

### *Ineffective Assistance of Counsel*

By his first assignment of error, Ned urges appointed counsel rendered ineffective assistance in failing to file a timely motion to reconsider sentence. The motion to reconsider must be filed within 30 days after the imposition of sentence, La. C. Cr. P. art. 881.1 (A)(1), but counsel did not do so until December 20, or 80 days after sentence. Ned concedes the court denied the motion but argues the court lacked jurisdiction to take any action because it was untimely, *State v. Wade*, 53,311 (La. App. 2 Cir. 1/15/20), 289 So. 3d 1158, *writ granted (on other grounds), case remanded*, 20-00299 (La. 7/31/20), 300 So. 3d 389. Ned shows that without this motion, the defendant is relegated to the claim of bare excessiveness, La. C. Cr. P. art. 881.1 (E). He concludes that under the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), counsel's negligent conduct removed his chance to argue the weight of aggravating and mitigating evidence under La. C. Cr. P. art. 894.1, thus

4

creating a reasonable probability that the outcome of the appeal would be different.

This argument lacks merit. A claim of ineffective assistance of counsel requires a showing that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and the inadequate performance prejudiced the defendant. *Strickland v. Washington*, *supra*; *State v. Ball*, 19-01674 (La. 11/24/20), 305 So. 3d 90. The claim is normally raised by application for post conviction relief, La. C. Cr. P. art. 930.8, but if the record is sufficient the court may address it on appeal. *State v. Ratcliff*, 416 So. 2d 528 (La. 1982); *State v. Kelly*, 55,087 (La. App. 2 Cir. 6/28/23), 367 So. 3d 964. The mere failure to file a motion to reconsider is not, per se, ineffective assistance. *State v. Jackson*, 52,606 (La. App. 2 Cir. 4/10/19), 268 So. 3d 1217, *writ denied*, 19-00699 (La. 10/15/19), 280 So. 3d 560. While the district court was not statutorily authorized to consider the untimely motion, *State v. Wade*, *supra*, the court apparently did so anyway. On this record, there is no showing that the motion, if timely, would have resulted in a different sentence. *State v. Demery*, 55,580 (La. App. 2 Cir. 4/10/24), 384 So. 3d 435; *State v. Jackson*, *supra*. On this record, the claim does not meet the standard for ineffective assistance. This assignment of error lacks merit.

### *Excessive Sentences*

By his second assignment of error, Ned urges the sentences of 15 years for attempted manslaughter and 5 years for aggravated flight from an officer are excessive, especially since the court ordered them to be served consecutively. He contends the court gathered only limited personal information about him: age, educational level, and recent employment.

5

Further, he argues, the court overlooked mitigating facts: police were not investigating him for a violent offense; he panicked and reacted poorly when officers arrived; the entire incident was very brief; when he was surrounded by police on a dead-end street, he did not draw the weapon he had under his seat; Ofc. Visciotti was not seriously injured; and none of his prior offenses involved drugs or firearms. Given these facts, he submits the statutory maximum of 5 years for aggravated flight was excessive.[1]

Appellate review of sentences for excessiveness is a two-prong inquiry. First, the court must find that the sentencing court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The sentencing court is not required to list every aggravating or mitigating circumstance, so long as it adequately considered them in particularizing the sentence to the defendant. *State v. Smith*, 433 So. 2d 688 (La. 1983). The goal of Art. 894.1 is to articulate an adequate factual basis for the sentence, not to achieve rigid or mechanical compliance with its provisions. *State v. Lanclos*, 419 So. 2d 475 (La. 1982). The important elements to be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense, and the likelihood of rehabilitation. *State v. Jones*, 398 So. 2d 1049 (La. 1981). Even in the absence of compliance with Art. 894.1, a sentence may be upheld if the evidence in the record clearly illumines the sentencing choice. *State v. Williams*, 397 So. 2d 1287 (La. 1981); *State v. Demery*, *supra*.

---

[1] This court notes that the applicable statute, R.S. 14:108.1 (E)(1), was amended to increase the maximum to 10 years. 2024 La. Acts No. 305. This amendment took effect August 1, 2024, three years after Ned's offense.

6

The second prong is a review for constitutional excessiveness. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Dorthey*, 623 So. 2d 1276 (La. 1993). A sentence is deemed grossly disproportionate if, when crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166. The sentencing court has wide discretion in imposing a sentence within statutory limits, and such a sentence will not be set aside as excessive in the absence of manifest abuse of that discretion. *State v. Williams*, 03-3514 (La. 12/13/04), 893 So. 2d 7.

The court's compliance with Art. 894.1 was minimal, barely touching the "important elements" of Ned's personal history as recognized in *State v. Jones*, *supra*. However, the record (two days of trial) supplies adequate information about Ned's criminal record, the gravity of the offense, and the prospects of rehabilitation; in short, the record clearly illumines the sentencing choice. Moreover, given the totality of the record, especially Ned's malicious choice to target Ofc. Visciotti with a moving automobile, the individual sentences of 15 and 5 years do not shock the sense of justice and are not excessive.

We are constrained to find, however, that the district court's sentencing colloquy does not meet the requirements for imposing consecutive sentences. The offenses of conviction, aggravated flight from an officer and attempted manslaughter, obviously arose from the same course of conduct. The rule of concurrent sentences is stated in La. C. Cr. P. art. 883, which states, in pertinent part:

7

> If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively.

It is within the trial court's discretion to make sentences consecutive rather than concurrent. *State v. Green*, 16-0107 (La. 6/29/17), 225 So. 3d 1033; *State v. Mosley*, 56,067 (La. App. 2 Cir. 12/18/24), 402 So. 3d 1219. When consecutive sentences are imposed, the court shall state the factors considered and its reasons for the consecutive terms. *State v. Mosley*, *supra*. Among the factors to be considered are the defendant's criminal history, the gravity or dangerousness of the offense, the viciousness of the crimes, the harm done to the victims, whether the defendant constitutes an unusual risk of danger to the public, the potential for the defendant's rehabilitation, and whether the defendant has received the benefit of a plea bargain. *Id.*, and citations therein. A judgment directing that sentences arising from a single course of conduct be served consecutively requires particular justification from the evidence of record. *State v. Lewis*, 416 So. 2d 921 (La. 1982); *State v. Mosley*, *supra*.

As noted, the district court minimally covered the sentencing factors of Art. 894.1, mentioning only Ned's age, level of education, recent work history, and certain aggravating factors to support the imposition of hard labor. The court then stated, with no further elaboration, that the sentences would be consecutive. This does not meet the requirement of "particular justification" based on the record. *State v. Lewis*, *supra*; *State v. Mosley*, *supra*. On this showing, we cannot find an adequate statement of facts to constitute a particular justification for the consecutive sentences. We are,

8

therefore, required to vacate the sentences and remand to the district court for further proceedings in compliance with Art. 883.

The court expresses no opinion whether consecutive sentences may be justified, ultimately, for this offender and these offenses. We cannot review the matter, however, without some semblance of a particular justification from the district court. That is the purpose of this remand.

This assignment has merit.

## CONCLUSION

For the reasons expressed, the convictions are affirmed and the claim of ineffective assistance of counsel is denied. The sentences, however, are vacated and the case remanded to the district court for further proceedings in compliance with Art. 883.

**CONVICTIONS AFFIRMED; SENTENCES VACATED AND CASE REMANDED FOR RESENTENCING**.