466 So.2d 777 (1985)
STATE of Louisiana
v.
Allen R. SIMMONS.
No. KA-2637.
Court of Appeal of Louisiana, Fourth Circuit.
March 12, 1985.
*778 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Kathy Lee Torregano, Asst. Dist. Atty., New Orleans, for plaintiff-appellee, State of Louisiana.
George L. Moore, New Orleans, for defendant-appellant, Allen R. Simmons.
Before BARRY, WARD and WILLIAMS, JJ.
WARD, Judge.
The State of Louisiana charged Allen Simmons with committing attempted second degree murder. After hearing the evidence, the jury returned a verdict of guilty as charged. The Trial Judge ordered a pre-sentence investigation, and after reviewing the pre-sentence report, sentenced Simmons to serve forty years at hard labor.
In this appeal, Simmons first argues that his conviction is not supported by the evidence because a specific intent to kill, an essential element of the crime was not proved beyond a reasonable doubt. We disagree and affirm Simmons' conviction.
The evidence shows that in the early morning hours of November 1, 1981, after Allen Simmons' car had run out of gasoline, he went to J.J.'s Lounge where he had often been in the past, for the purpose of getting a ride home. He asked Alfred Hampton, a long-time acquaintance, for a ride. Hampton refused, walked away from Simmons, and ordered a drink from the other side of the bar.
Simmons followed, and as Hampton began to drink, Simmons struck Hampton in the head. Hampton grabbed Simmons, a struggle ensued, and Simmons then shot Hampton. The fight continued with both men struggling on the floor. Hampton testified that Simmons tried to shoot him again, while he was on the floor. At that point, David Hunter, an employee of the lounge, grabbed the gun from Simmons. After separating the two men, he unloaded the gun, gave it back to Simmons, and ordered him to leave. Simmons did exactly that and dutifully turned himself into the police approximately one month after the incident. As a result of the shooting, Hampton was hospitalized for a year and was confined to a wheel chair at the time of trial.
Three employees of J.J.'s Lounge who were present during the shooting testified at trial. Israil Eskinde and Archie Campbell testified that they knew Hampton and Simmons, that they heard the shot, that they saw Simmons with a gun in his hand on top of Hampton during the scuffle on the floor, that Hampton was trying to either push the gun away or get it out of Simmons' hand, and that Hampton was unarmed.
David Hunter, the third employee, testified that he overheard Simmons' request for a ride home and Hampton's refusal, that he saw Simmons strike Hampton in the head, that he saw Hampton grab Simmons after Simmons hit Hampton, that he then heard a shot, and that while Simmons and Hampton were fighting on the floor, he twisted Simmons' gun from his hand.
*779 Simmons testified that it was Hampton who hit him first and that he acted in self-defense. The jurors obviously did not accept Simmons' version of the incident because they found him guilty of attempted second degree murder.
Specific intent to kill usually must be proved, as in this case, by circumstantial evidence. From the fact that Simmons shot Hampton at close range and from Hampton's testimony that Simmons tried to shoot him a second time, a rational juror could readily find the State had proved beyond a reasonable doubt that Simmons had a specific intent to kill Hampton.
Simmons' second argument on appeal is that he was denied due process when the Trial Judge did not disclose to him the contents of the pre-sentence investigation report.
Article 877 of the Code of Criminal Procedure declares that the report is privileged and shall not be disclosed except to certain enumerated officials. Neither the defendant nor his attorney are among those enumerated. However, the Supreme Court has held that principles of fundamental fairness may, in some circumstances, dictate disclosure of the contents of the report to a defendant or his attorney. To require disclosure, it must be clear the Trial Judge is relying on the report to guide him in imposing a fair sentence, but we can reasonably conclude that when a Trial Judge reviews the pre-sentence report before sentencing, it plays some part in his consideration of the sentencing guidelines. State v. Trahan, 367 So.2d 752 (La.1978). When counsel for defendants timely move for disclosure of the report, alleging with particularity that it contains false information detrimental to the defendant, the Trial Court errs if the contents are not disclosed and the defendant given an opportunity to contradict or explain substantially prejudicial information. State v. Trahan, supra.
In the instant case, counsel for defendant moved for disclosure of the report, but did not allege that it contained false informationbecause he knew of none. Of course, he had no way of knowing unless the contents were made known to him. And because the report is privileged save to a few, we do not know how counsel could have learned from legitimate sources that the report might have contained detrimental false information.
The Trial Judge told counsel he was not entitled to see the report. When sentencing the defendant, the Trial Judge tersely said the basis of his sentence was three of the aggravating factors listed in the Article 894.1 sentencing guidelines:
(1) There is an undue risk that during the period of a suspended sentence or probation the defendant will commit another crime;
(2) The defendant is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment to an institution; or
(3) A lesser sentence will deprecate the seriousness of the defendant's crime.
The Judge did not say how he arrived at those conclusions, but we presume they were based on the report. If the underlying facts included in the report had been disclosed before the Trial Judge sentenced Simmons, counsel might well have been satisfied and secure in the knowledge that accurate information supports the Judge's conclusions.
But since experience shows that judges often routinely recite the aggravating circumstances of the sentencing guidelines without explaining how they reached their conclusions, the recitation is meaningless unless the underlying basis is disclosed. Hence, we hold that principles of fundamental fairness require disclosure upon request, after the Trial Judge conducts an in camera inspection of the report, excising only that information given in the expectation of confidentiality. We find support for our view in the American Bar Association Project on Minimum Standards for Criminal Justice which formulates standards to provide safeguards against the imposition of sentences based on erroneous information:

*780 4.4 Presentence report; disclosure; parties.
(a) Fundamental fairness to the defendant requires that the substance of all derogatory information which adversely affects his interests and which has not otherwise been disclosed in open court should be called to the attention of the defendant, his attorney, and others who are acting on his behalf.
(b) This principle should be implemented by requiring that the sentencing court permit the defendant's attorney, or the defendant himself if he has no attorney, to inspect the report. The prosecution should also be shown the report if it is shown to the defense. In extraordinary cases, the court should be permitted to except from disclosure parts of the report which are not relevant to a proper sentence, diagnostic opinion which might seriously disrupt a program of rehabilitation, or sources of information which has been obtained on a promise of confidentiality. In all cases where parts of the report are not disclosed under such authority, the court should be required to state for the record the reasons for its action and to inform the defendant and his attorney that information has not been disclosed. The action of the court in excepting information from disclosure should be subject to appellate review.
* * * * * *
4.5 Presentence report: Time of disclosure; presentence conference.
(a) The information made available to the parties under section 4.4 should be disclosed sufficiently prior to the imposition of sentence as to afford a reasonable opportunity for verification.
(b) In cases where the presentence report has been open to inspection, each party should be required prior to the sentencing proceeding to notify the opposing party and the court of any part of the report which he intends to controvert by the production of evidence. It may then be advisable for the court and the parties to discuss the possibility of avoiding the reception of evidence by a stipulation as to the disputed part of the report. A record of the resolution of any issue at such conference should be preserved for inclusion in the record of the sentencing proceeding (section 5.7[a][iii]).
This is not a novel idea in Louisiana. The Supreme Court in State v. Owens, 377 So.2d 316 (La.1979) recommended that trial judges follow the procedure suggested by the American Bar Association. See also Joseph, Criminal Law and Procedure, The Work of the Louisiana Appellate Courts for the 1978-79 Term, 40 La.L.Rev. 635, 658 (1980).
Further, we believe this procedure will obviate the very frequent allegations in appeals which assert the Trial Court erred because it did not comply with the sentencing guidelines, and which often require vacating sentences and remanding cases to the Trial Court.
For the foregoing reasons, we vacate the sentence and remand this case for the limited purpose of re-sentencing after disclosure of the non-confidential portions of the pre-sentence investigation report. Since we vacate the sentence, we need not consider Simmons' final assignments of error that the Trial Judge did not comply with C.Cr.P. art. 894.1 and that the sentence was excessive.
AFFIRMED IN PART; REMANDED IN PART.