512 So.2d 607 (1987)
STATE of Louisiana, Appellee,
v.
Milton K. HERRINGTON, Appellant.
No. 18705-KA.
Court of Appeal of Louisiana, Second Circuit.
August 19, 1987.
Rehearing Denied September 17, 1987.
Writ Denied December 18, 1987.
*608 Blackwell, Chambliss, Hobbs & Henry by James A. Hobbs, West Monroe, for appellant.
William J. Guste, Jr., Atty. Gen., Barbara B. Rutledge, Asst. Atty. Gen., Baton Rouge, James A. Norris, Jr., Dist. Atty., Joseph Mickel, Asst. Dist. Atty., Monroe, for appellee.
Before MARVIN, SEXTON and LINDSAY, JJ.
LINDSAY, Judge.
Milton K. Herrington was convicted after trial by jury of possession of cocaine with intent to distribute, in violation of LSA-R.S. 40:967. After a presentence investigation the defendant was sentenced to serve ten years at hard labor. The defendant *609 appeals his conviction and sentence. For the following reasons, we affirm.

BACKGROUND FACTS
The record reveals that Milton Herrington was arrested after the police received a tip from Nita Gaye Walker, a reliable confidential informant and former girlfriend of the defendant, that the defendant was in possession of a quantity of cocaine which he intended to distribute. Nita Gaye Walker had agreed to assist the police, allegedly in return for assistance with a Florida case in which she was charged with possession of cocaine. Ms. Walker informed state police narcotics officers in Monroe, by phone, that the defendant was to supply her with cocaine. The informant advised the officers that the defendant was to drive her from New Orleans to Monroe.
Ms. Walker had contacted the defendant in New Orleans and asked for a ride from New Orleans to Monroe. On October 30, 1985, the defendant picked up Ms. Walker at her brother's apartment in New Orleans and they left for Monroe.
State Trooper Marion Bankson was waiting for the defendant and Ms. Walker to arrive at the Monroe airport pursuant to their prior arrangements. At approximately 6:00 p.m. on October 30, 1985 Trooper Bankson spotted the defendant driving a 1986 Pontiac Grand Am bearing license number 193N008. The defendant left Ms. Walker at the airport and proceeded to the Holidome in Monroe. Trooper Bankston followed.
After being left at the Monroe airport by the defendant, Ms. Walker met Trooper Donald French who was also stationed at the airport to keep the defendant and Ms. Walker under surveillance. Ms. Walker informed Trooper French that she had one ounce of cocaine in her possession which the defendant had given to her during the trip. She also stated that more cocaine was in the defendant's car.
Trooper Bankson was advised of those developments as he followed the defendant to the Holidome. When the defendant went to the registration desk carrying an attaché case and luggage Trooper Bankson took a position where he could watch the car and the defendant at the same time.
Sergeant James Cannon, working undercover, stood beside the defendant as he was registering at the hotel. The defendant registered in the false name of Tom Dangerfield. While the defendant was registering at the hotel, Trooper French arrived and positioned himself where he could watch the defendant's car.
As the defendant proceeded to his room, he was stopped by Sergeant Cannon and Trooper Bankson. The officers identified themselves and read the defendant his Miranda rights.
The officers testified that they took the defendant to the parking lot and put his luggage and attache case in their car and locked it. They transported the defendant to police headquarters in another police car and had his car towed in. The car was not searched at that time.
At approximately 1:05 a.m. on October 31, 1985, Trooper Bankson obtained a search warrant for the car, attacheé case and luggage. During the search of the car a Wendy's hamburger paper sack was located in the glove compartment. In the sack were five ziplock plastic baggies of suspected cocaine. Each plastic baggie contained approximately an ounce of high quality cocaine. Also found in the sack was a quantity of Inositol, a type of sugar used in "cutting" cocaine. During the investigation, the defendant's fingerprints were found on one of the plastic bags.
In addition to the cocaine and Inositol, the officers found a copy of the lease for the vehicle in the name of Carlos Marrero, a copy of the lease to appellant's $1,200 per month lakefront apartment in New Orleans, issued in the name of "Scut" Herrington, and a telephone credit card in the name of "Eddie Echols," bearing the same address shown on the apartment lease.
At police headquarters, Trooper John Fragala, Jr., read defendant his Miranda rights at approximately 8:42 p.m. Trooper Fragala testified that there were no threats or promises made to the defendant. The defendant was formally arrested at approximately *610 1:50 a.m. on October 31, 1985 and at this time Trooper Fragala again read the defendant his Miranda rights and the defendant signed a waiver of rights form. Sergeant James Cannon and Trooper Marion Bankson testified that the defendant, after having been informed of his Miranda rights on at least three occasions that night, confessed to them that he bought the cocaine found in his car from some Cubans in New Orleans at a price of approximately $10,000. He stated that he intended to sell the cocaine while in Monroe. He also named the prospective purchasers.
As he was being booked and fingerprinted, the defendant made additional inculpatory statements to Deputy Lynn Foster. He told Deputy Foster that the officers didn't get his car because he left his Mercedes in New Orleans and had rented another car. He also stated that his normal practice was to hide his cocaine in a culvert upon entering town, later returning to pick it up after being sure that no one was waiting for him at his hotel room. This time he did not follow his usual routine because he was so tired and wanted to get to the hotel and get into a hot tub.
At the trial, the defendant testified in his own defense. He claimed that he had been entrapped. He testified that the cocaine belonged to Ms. Walker and she had "set him up" so the police would recommend leniency in a case pending against her in Florida. He testified that his fingerprints were on one of the bags of cocaine because it had fallen to the floor of the car and he reached over and picked it up. The defendant also testified that he registered in a false name at the motel in order to prevent a girlfriend in Monroe from learning that he was in town.
The defendant also denied many of the statements attributed to him by the officers, although he admitted that he told the officers the cocaine belonged to him. However, he stated he did so to protect Ms. Walker. He assumed she would help get him out of this situation.
Mr. Herrington also testified that Deputy Foster was lying about the statements made to him. Herrington claimed Foster was lying in retaliation for a complaint Herrington had made to Foster's superior, Colonel Alfred Calhoun of the Ouachita Parish Sheriff's Office. Herrington testified that Foster had asked him to "fix Foster up" with Mr. Herrington's girlfriend, who visited Mr. Herrington in jail. Deputy Foster was to take the defendant to a doctor's office and then make arrangements for both men to have time with Herrington's girlfriend. Herrington later informed Colonel Calhoun about the incident and Herrington testified that Foster retaliated by stating he would get even with the defendant.
Deputy Foster testified that he never made such a proposal to the defendant. He admitted that the defendant reported such an incident to Colonel Calhoun and that Colonel Calhoun had questioned him about it. Colonel Calhoun testified that the defendant did report such an incident to him and that he questioned Deputy Foster but there was no substantiation to the defendant's report.
The defendant explained that he was driving a rental car because his car was in the shop. Moreover, the car was rented in another name because the repair shop rented the car for him and then charged him for the rental car.
The defendant did not call any witnesses to corroborate his testimony. At the conclusion of the trial, he was found guilty as charged by a unanimous jury verdict. From this verdict and his subsequent sentence to serve ten years at hard labor, he has appealed.

ASSIGNMENTS OF ERROR
Defendant relies upon four assignments of error, two dealing with the merits of the case and two with the sentence imposed. Defendant contends:
1. The trial court erred in admitting the testimony of Deputy Lynn Foster concerning statements of the defendant that had not been revealed prior to trial in response to defendant's discovery motion;
*611 2. That there is insufficient evidence to convict him of possession of cocaine with intent to distribute.
3. The trial court erred in not furnishing the defendant a copy of the presentence investigation report as requested in defendant's motion to traverse.
4. The trial judge's sentence was excessive.
1. DISCOVERY
Defendant filed a discovery motion pursuant to LSA-C.Cr.P. Art. 716, requiring that the district attorney inform him of the existence of any oral confession or statement of any nature, made by the defendant, which the district attorney intended to offer into evidence at the trial. The district attorney complied with the motion. However, the district attorney's response did not refer to the statements made by the defendant to Deputy Lynn Foster.
On the second day of trial, at the noon recess, Deputy Foster informed the assistant district attorney trying the case that the defendant had made a confession to him. Deputy Foster had not previously given this information to anyone connected with this case. Further, defendant does not contend that the assistant district attorney or anyone in his office had any knowledge of such confession or Deputy Foster's proposed testimony prior to this time.
LSA-C.Cr.P. Art. 729.3 requires a party who discovers additional evidence subject to discovery to promptly notify the other party and the court of the existence of the additional evidence. Failure to comply may result in the application of the sanctions provided by LSA-C.Cr.P. Art. 729.5.
When the assistant district attorney informed the court and defense counsel of the confession made to Deputy Foster, defense counsel moved that the confession be ruled inadmissible because its existence had not been included in the state's discovery response. The assistant district attorney stated that he would not use the statement in his case in chief, but that he might use it in rebuttal. The court declined to rule on the admissibility of the statement at that time, desiring rather to wait until the statement might be used. When this situation arose, the state had not concluded its case. The trial proceeded throughout the day.
On the next trial day, defense counsel asked the trial court to rule on the admissibility of the testimony of Deputy Foster as to the statement so that the defense would be able to proceed and plan its strategy accordingly. The trial court ruled that the statements could be used by the state in rebuttal.
Although objection was made to the court's ruling, there was no motion for continuance or recess. Thereafter, defense counsel elicited testimony from the defendant tending to show that Deputy Foster might have an ulterior motive for making up the confession; specifically, in order to "get even" with the defendant. Deputy Foster then testified as to statements made by the defendant to him.
Defendant now contends that admitting the testimony of Deputy Foster concerning the defendant's confession constitutes reversible error because discovery was not complied with until after trial began. We disagree since discovery was complied with as soon as the information became available and because the defendant has failed to show that he was prejudiced.
The purpose behind the discovery rules contained in the Louisiana Code of Criminal Procedure is the elimination of unwarranted prejudice which could arise from surprise testimony. State v. Mitchell, 412 So.2d 1042 (La.1982). Even though the state's failure to comply with discovery procedures will not result in an automatic reversal, if the defendant is prejudiced by the failure to disclose, he is entitled to reversal. State v. Mitchell, supra. Late disclosure, as well as nondisclosure, can so prejudice a defendant that he may be deprived of his constitutional right to a fair trial. State v. Williams, 448 So.2d 659 (La.1984). Although there is a continuing duty of disclosure, there is no duty on the part of the state to disclose information which it does not possess. Therefore, absent *612 a showing of prejudice, exclusion of the evidence is a sanction which is not available where the state has properly informed the defendant of the receipt of additional evidence, even though the new matter is uncovered at an inopportune time for the defense. State v. Williams, supra.
Defendant claims that the admission of the statement made to Deputy Foster was prejudicial because it was inculpatory and because he was informed of the statement at such a late date. The mere fact that the statement was inculpatory does not make it prejudicial in the sense that it is unfair to the defendant to allow the statement to be used at trial. Conversely, it may be prejudicial if disclosed at such a late date that it prevents a fair trial.
In this case, the statement did not catch the defendant "off guard" so that he could not prepare for or rebut the evidence. In fact, defendant presented his own testimony seeking to discredit the anticipated testimony of Deputy Foster. Our review of the record reveals that the defendant was not prejudiced by the use of Deputy Foster's testimony concerning defendant's confession and inculpatory statements, even though defendant was not informed of the state's intended use of these statements until after the trial began. Hence, this assignment of error is meritless.

2. SUFFICIENCY OF EVIDENCE
Defendant contends that there was insufficient evidence presented to convict him of possession of cocaine with intent to distribute. He alleges that, without the testimony of Deputy Foster, there is no evidence that he intentionally or knowingly possessed the cocaine. Additionally, defendant testified that Ms. Walker brought the cocaine into his car and left it there without his knowledge.
To determine whether sufficient evidence was presented at trial to support the conviction this court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the offense proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
As stated above, we have found that the testimony of Deputy Foster concerning the confession given by defendant was admissible at trial. In addition to Deputy Foster's testimony, Sergeant Cannon and Trooper Bankston testified that appellant admitted ownership of the cocaine and his intent to sell it while in Monroe. Furthermore, defendant's fingerprints were found on one of the plastic bags of cocaine. In his testimony, defendant admitted that he saw the cocaine in the possession of Ms. Walker while in his car. However, it is his contention that Ms. Walker brought the cocaine into the car and left it there. He further testified that his statement to Sergeant Cannon and Trooper Bankston was made with the intent of covering up for Ms. Walker, who had been in trouble previously for having cocaine. He felt that Ms. Walker would be able to get him out of trouble because she had, to his knowledge, made deals with law enforcement agencies in the past when she had been caught with cocaine. Last, defendant denies ever making a confession to Deputy Foster.
We find that a rational trier of fact could have found beyond a reasonable doubt that the defendant intentionally and knowingly possessed cocaine with the intent to distribute. The only indication to the contrary is defendant's self-serving testimony that his earlier statements in which he admitted ownership of the cocaine were false. His testimony, in light of the surrounding circumstances and facts of the case, could be found unbelievable. The location of the cocaine in his car, the quantity and quality of the cocaine, his fingerprints on one of the bags, plus his admissions to the officers of his ownership of the cocaine and his plans to sell it, prove that he knowingly and intentionally possessed the cocaine with intent to distribute. Therefore, this assignment of error is without merit.

3. ACCESS TO PRESENTENCE INVESTIGATION REPORT
Following plaintiff's trial and conviction, the trial judge ordered a presentence *613 investigation. On July 2, 1986, the date originally set for sentencing, defendant filed a motion to traverse the adverse information contained in the presentence investigation report and to obtain a copy of that report. The court granted the motion to traverse, but denied defense counsel's request for a copy of the report. Sentencing was rescheduled for August 22, 1986.
It is apparent that the trial judge provided all adverse information contained in the PSI to defense counsel. Based upon the disclosure of the information contained in the PSI, defense counsel prepared and filed a comprehensive motion to traverse. Pursuant to that motion, a full and complete evidentiary hearing was conducted on August 22, 1986. At the conclusion of the hearing, the trial judge noted that some of the allegations contained in the PSI were not adequately shown to exist and the trial judge, therefore, disregarded those matters in passing sentencing.
Access to the presentence investigation report is primarily governed by LSA-C. Cr.P. Art. 877.[1] Article 877 provides that the presentence investigation report is considered confidential. However, the defendant, or his counsel, may be advised of the factual content and conclusions of the presentence investigation report, while sources of confidential information or irrelevant information may be withheld. LSA-C.Cr.P. Art. 877 does not require that copies of the PSI be disseminated. Factual content thereof are to be revealed to the defendant or his counsel.
In State v. Underwood, 353 So.2d 1013 (La.1977), it was held that the trial court erred in failing to afford defense counsel access to the presentence report and an opportunity to rebut any adverse information contained therein.
Since State v. Underwood, the Louisiana Supreme Court has consistently held that the accused has a right to access to such reports, upon request and appropriate allegation, with the court (after an in camera examination) withholding such information which is not relevant or which is protected by confidentiality. Access is provided in order to avoid an excessive sentence improperly resulting from materially false information. State v. Bosworth, 360 So.2d 173 (La.1978); State v. Trahan, 367 So.2d 752 (La.1978); State v. Richardson, 377 So.2d 1029 (La.1979). See also: American Bar Association Standards Relating to the Administration of Criminal Justice, Standards Relating to Sentencing Standards and Alternatives, Standard 4.4 (1968), which provides that the defendant or defendant's counsel may inspect the report.
A review of the cases dealing with access to presentence investigation reports indicate that the defendant is entitled to "disclosure," "access" and "to examine." See, for example, State v. Richardson, supra; State v. Telsee, 388 So.2d 747 (La.1980); State ex rel Graffagnino v. King, 436 So.2d 559 (La.1983); and State v. Simmons, 466 So.2d 777 (La.App. 4th Cir.1985).
The cases of State v. Grey, 408 So.2d 1239 (La.1982) and State v. Colvin, 452 So.2d 1214 (La.App. 2d Cir.1984) specifically mention the defendant receiving a copy of the PSI. However, neither of these cases specifically dealt with the issue of the quality of access to which the defendant was entitled. They merely stated that the defendant was not entitled to a copy in the absence of a timely request and a showing that false information was included in the report.
Our review of the record in this case leads us to the conclusion that although defendant's counsel did not have a copy of the presentence report, he obviously had access to the report and full disclosure of the contents thereof was made to him prior to the filing of his motion to traverse. Defendant's motion contained 15 separate allegations regarding statements in the presentence investigation report which the defendant claims were untrue. The fifteen allegations listed in defendant's motion are in the same order as they appear in the presentence report, with one minor exception. *614 Furthermore, several of the allegations contained in defendant's motion use language which is exactly the same, or very nearly the same, as the language contained in the presentence report. We also note that there are no remaining statements in the presentence report which might be considered damaging to the defendant.
Therefore, it is clear that the trial judge revealed to defense counsel the adverse information contained in the presentence report. The record is not clear as to the manner in which this disclosure was made. Of course, if the trial judge failed to provide full disclosure of the report to defense counsel, (excluding confidential and irrelevant material) that was error.
Our review of the presentence report fails to reveal adverse information not contained in the defendant's motion to traverse. Because the adverse information was provided to defense counsel, a subsequent denial to defense counsel of a copy of the report was not error.
Even if the failure to provide a copy of the report to defense counsel should be considered error, we find that under the particular facts of this case, the error was harmless. LSA-C.Cr.P. Art. 921. As we have stated above, our review of the PSI and the allegations of the motion to traverse reveal that there is no other adverse information contained in the PSI which could logically form the basis for another motion to traverse should this court set aside the sentence and remand for further proceedings and resentencing.
This assignment of error is without merit.

4. EXCESSIVE SENTENCE
The defendant contends that his sentence to serve ten years at hard labor is excessive. The test imposed by the reviewing court in determining excessiveness of a sentence is two pronged. First, the record must show that the trial court took cognizance of the criteria set forth in LSA-C. Cr.P. Art. 894.1. The trial court is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the Article in particularizing the sentence to the defendant. State v. Smith, 433 So.2d 688 (La.1983). The articulation of the factual basis for a sentence is the goal of LSA-C.Cr.P. Art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with LSA-C.Cr.P. Art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which must be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981).
In this case, the reasons given by the trial judge for the defendant's sentence demonstrate an adequate compliance with LSA-C.Cr.P. Art. 894.1. The trial judge noted that the defendant was a first felony offender and had no prior convictions, although he had been arrested once for interferrence with a police officer. The trial court noted that the actions of defendant in dealing with a controlled dangerous substance, if carried to their completion, would result in serious harm to numerous individuals who used the cocaine. The amount and value of cocaine carried by the defendant and his mode of operation indicates that he has been a dealer or supplier for some time. There were no grounds found which tend to excuse or justify the defendant's conduct. The only apparent motive for defendant's actions was his desire for more money.
Defendant was twenty-six years old at the time of sentencing and had been divorced from his wife for approximately four years. He had no dependents. The trial judge found that defendant was a considerate person who had helped his family whenever possible.
The trial court decided against a suspended sentence because defendant presented an undue risk of further criminal *615 activity and was in need of correctional treatment. The trial court also found that a lesser sentence would deprecate the seriousness of the crime committed.
The factors listed above demonstrate the trial court's adequate compliance with LSA-C.Cr.P. Art. 894.1. Therefore, defendant's argument that the trial court failed to comply with LSA-C.Cr.P. Art. 894.1 is meritless.
Second, the reviewing court must determine whether a sentence is too severe given the circumstances of the case and the background of the defendant. A sentence violates LSA-Const. Art. 1 § 20 (1974) if it is grossly out of proportion to the seriousness of the offense and nothing more than a purposeless and needless infliction of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it is so disproportionate as to shock the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985). The trial judge has wide discretion in the imposition of the sentence within the statutory limits and such a sentence should not be set aside as excessive absent a manifest abuse of discretion. State v. Square, 433 So.2d 104 (La.1983).
A conviction for possession of cocaine with intent to distribute carries with it a maximum penalty of thirty years, with a minimum sentence of five years. In addition, the trial court could have imposed a fine of up to $15,000. Considering the reasons articulated by the trial judge for the sentence imposed, we do not consider the defendant's ten year hard labor sentence to be so disproportionate to the crime as to shock the sense of justice.
For the reasons assigned, we find that the trial judge complied with LSA-C.Cr.P. Art. 894.1 in stating his reasons for the sentence imposed and that the sentence imposed is not unconstitutionally excessive. Thus, defendant's assignment of error is meritless and his sentence is affirmed.

CONCLUSION
For the reasons outlined above, the defendant's conviction and sentence are affirmed.
AFFIRMED.

ON APPLICATION FOR REHEARING
Before NORRIS, LINDSAY, SEXTON, MARVIN and FRED W. JONES, JJ.
Rehearing denied.
NOTES
[1] Article 877 was amended by two separate Acts of the legislature in 1985; Acts 1985, No. 200 § 1, effective July 6, 1985 and Acts 1985, No. 384 § 1, effective September 6, 1985. For purposes of this discussion, both articles are considered.